## DARRELL DUANE KINCAID *v.* STATE OF INDIANA.

[No. 1275S373. Filed September 20, 1976. Rehearing denied December 8, 1976.]

*Carl J. Sandy, E. Kent Moore, Moore, Sandy, Moore & Deets,* of Lafayette, *John H. Meyers,* Tippecanoe Public Defender, of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Darrell Duane Kincaid, was convicted on July 3, 1975, of first degree murder. Sentenced to life imprisonment on July 10, 1975, the Appellant filed his motion to correct errors on September 8, 1975. It is from the overruling of this motion by the trial court on October 3, 1975, that this appeal is taken.

The evidence at trial revealed that on March 22, 1975, thirteen-year-old Roger Wayne Cross discovered a human skeleton in an abandoned pit near Battle Ground, Indiana. Authorities were soon notified. A deputy sheriff of the Tippecanoe County Sheriff's Department subsequently found with the skeleton two paint-spattered tarpaulins and several items of clothing.

All the main bones of the skeleton were found in the pit

and were later assembled by the Tippecanoe County Coroner and other medical experts. It was determined that the skeleton was that of an adult female, approximately five feet in height, and between twenty-five and thirty years of age. The skeleton had been decomposing for some three to five years and the precise cause of death could not be determined. There were no fractures of the bones, although some teeth had apparently been knocked out.

Dr. Ralph Adams, a West Lafayette oral surgeon, examined the jawbone of the skeleton and found it to be, by radiograph comparison, that of Marjorie Reuzenaar, a former patient. It was the doctor's conclusion that some of the jaw's teeth had been knocked out by trauma of some sort, force which pushed the root tips through the front of the jawbone. The bone was jagged, as if fractured.

Further identification was provided by the mother of the decedent, Betty Reuzenaar. She identified a tank top and shoes found with the skeleton as belonging to her daughter. The Appellant, who did painting and roofing work, had divorced the decedent some three or four months before her disappearance on August 10, 1970. The decedent had been living once more with the Appellant when she disappeared. Her mother filed a missing persons report with the Lafayette Police Department on August 19, 1970.

While medical testimony could not establish a definite cause of death, neither could it rule out the possibility of a violent death. It was explained that it would be possible for someone to be beaten to death or shot, or stabbed, and not have a mark left on the skeleton.

It was thus non-expert testimony which tied the Appellant and decedent with foul play. The principal witness for the State was James Robert Strong. He had first met the Appellant in a bar in July of 1970. He subsequently worked for the Appellant in his roofing and painting business. He had met the decedent in junior high school and saw her occasionally at the Appellant's home. He saw her for the last time "about

the second week of August", 1970. He was returning to the Appellant's home at about midnight with a borrowed shirt when the Appellant and the decedent began arguing. The decedent, despite the witness's efforts to prevent it, was subsequently beaten to unconsciousness or death. She "had blood all over her face and she wasn't moving."

The Appellant then carried the decedent to his truck, where he wrapped the body in a tarpaulin. The witness was then compelled to accompany the Appellant as he drove and disposed of the body. The witness could not see all that happened, but he observed the Appellant lay the body in or near a hole. The Appellant then covered the body with dirt from a sack in the truck. According to Strong, as they left the scene the Appellant "just said, 'If you tell anybody, you're a dead man.' And then he took me home and we—I mean it was weird, you know. Like he said, 'Well, she's gone. Ain't nobody every going to find her now. She'll never bother nobody else.'"

Other witnesses testified to previous arguments between the Appellant and decedent and beatings inflicted by the Appellant on the decedent. One witness testified that in October, 1969, the Appellant had offered her money if she "would bump Margie off." Another testified to previous threats by the Appellant to kill the decedent. Still another testified that the Appellant had said that he could kill the decedent and get away with it by burying her under Interstate 65 "at the right time."

One witness had known the Appellant for fifteen to eighteen years. He testified that in 1970 the Appellant had spoken to him about the trouble the police were giving him since his wife's disappearance.

"A We talked about it and where—what had happened to her and everything, you know. He never did tell me that he killed his wife.
Q And did you say anything to him, Mr. Smith?
A Well, I told him if he killed her, you know, I knew a good place to bury her.
Q And did he say anything in response to that?

A He led me to believe that he had as good a place as I did.

Q Did he say where that was?

A It was at Battle Ground, I believe."

I.

We note at the outset that several issues presented in the Appellant's brief are insufficiently argued to permit adequate review. The first contention of error raised in the Appellant's brief is that the trial court erred in summarily denying a motion to dismiss which requested that the indictment in this case be set aside because "there was no determination of probable cause." No further explanation of the ground for this motion is presented in the Appellant's argument apart from the statement that it was obvious from the motion that there was no factual basis to indict the Appellant. We can find nothing in such an argument which indicates that the summary denial of this motion by the trial court was not correct.

The second issue presented urges that the Appellant was improperly denied indigent assistance. The entire argument on this issue consists of four sentences. It amounts to nothing more than allegations that a motion for indigent assistance should have been granted and that the Appellant was without sufficient funds to investigate this case when it was denied. We are not told what would have been investigated or how any investigation would have been carried out. The Appellant has not indicated that pretrial discovery was inadequate in any matters that would have been investigated. The burden is upon an appellant to show that error complained of was prejudicial. *Hester* v. *State,* (1974) 262 Ind. 284, 315 N.E.2d 351. The argument presented here is wholly insufficient in this regard.

We also note that the Tippecanoe Public Defender was originally appointed to represent the Appellant at trial, but that the appearance of that office was withdrawn. The Appellant was subsequently represented by a Lafayette law firm. The Appellant was able to retain

his own counsel and we have been presented with no facts which show that he could not have secured any desired investigative assistance.

The Appellant has presented a similarly abstract argument regarding allegations that the State withheld evidence from the defense and did not comply with the trial court's discovery order. The Appellant does not spell out what evidence was not produced, nor does he explain how the failure to produce this unidentified evidence constituted reversible error. It is merely contended that during the trial "it became obvious on several occasions" that evidence had been withheld. The Appellant's argument apparently credits the members of this court with psychic powers we do not possess. We can find no error here.

One issue included in the Appellant's statement of the issues, whether the trial court erred in giving certain jury instructions, is not included in the argument section of the Appellant's brief. That issue is waived. Ind. R. Ap. P. 8.3 (A) (7) ; *Green* v. *State,* (1971) 257 Ind. 244, 274 N.E.2d 267.

## II.

Following a day and a half of presentation of evidence, the defense moved to sequester the jury. This motion maintained that a radio report stating that the Appellant had been charged with rape just prior to the decedent's death would inflame the jury if it was heard. The trial court interrogated each juror individually to determine whether he or she had heard or read anything outside the courtroom which would prevent the impartial determination of the case. None of the jurors had heard or were informed of the contents of the radio broadcast in question. The motion was then denied.

The Appellant urges reversible error in this denial. We do not agree. The separation of a jury during trial is ordinarily a matter of trial court discretion. *Packwood* v. *State,* (1963) 244 Ind. 585, 193 N.E.2d 494. The Appellant presents no facts which show that the trial court abused its discretion here. It is not maintained

that the radio report in question was repeated over the air or in local newspapers. It is not contended that the jurors were at any time exposed to it. The trial court took steps to insure that the jury was impartial and we have been presented with no facts which show that those efforts were not successful.

## III.

The Appellant also contends that the trial court erred when it overruled defense motions for a directed verdict. The first such motion was made at the close of the prosecutor's opening statement. It is urged that the statement did not meet the requirements of Ind. Code § 35-1-35-1 (Burns 1975), which requires that it briefly state the evidence the prosecution expects will support its case. No further explanation of how this statement was deficient is presented. We find that it did, in fact, meet the statutory requirements. Even if we found it deficient, the Appellant has failed to show that he was in any way surprised or misled thereby. Reversible error will not be found in the absence of such a showing. *Carmon* v. *State*, (1976) 265 Ind. 1, 349 N.E.2d 167.

The Appellant also moved for a directed verdict at the close of the State's evidence and the close of all the evidence. These motions were based on the contention that the State "violated the procedure set out in Indiana law regarding proof of corpus delicti." It is urged that "many matters were introduced into evidence that would not have been permissable (sic) until there was proof of corpus delicti."

This argument confuses the law regarding the admission of confessions into evidence with the general rules regarding order of proof. "Although the order of proof is within the discretion of the trial court, it is usually required that independent evidence establish the corpus delicti or the commission of the crime before an extra-judicial confession is admitted. . . ." 8 I.L.E. *Criminal Law* § 246 at 376 (1971). There was, however, no confession ad-

mitted into evidence in this case. Talk of corpus delicti as it relates to the order of proof is thus misplaced. Here, we look simply to the general rule that the order of proof is within the sound discretion of the trial court. *Thomas* v. *State,* (1975) 262 Ind. 590, 321 N.E.2d 194. The Appellant has presented no facts which show that this discretion was abused.

## IV.

In another four-sentence argument, the Appellant contends that there was no evidence showing that he committed the crime of first degree murder. It is asserted that the evidence did not show an intentional act on the part of the Appellant to kill the decedent and that the only crime shown was that of voluntary manslaughter. These assertions essentially question the sufficiency of the evidence.

> "It is well-established that this court, in determining the sufficiency of evidence, does not judge the credibility of witnesses nor weigh evidence. We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) [264] Ind. [14], 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538."

*Matthew* v. *State,* (1975) 263 Ind. 672, 337 N.E.2d 821 at 822.

The evidence in this case was sufficient to establish the elements of purpose, malice, and premeditation required for a conviction for first degree murder. Ind. Code § 35-13-4-1 (Burns 1975). In its legal sense, malice "characterizes all unlawful acts done with evil disposition, a wrongful and unlawful motive, and such as proceed from a heart regardless of social duty and fatally bent on mischief; it is not limited to hatred or revenge, or to ill will toward an individual." 15 I.L.E. *Homicide* § 12 at 298 (1959). This was amply shown by the very nature of the argument and beating which led to the death of the decedent.

The intent of the Appellant was apparent from the extent of the beating, his failure to seek medical assistance, and his efforts to dispose of the body. Evidence of an intent to kill is also found in the Appellant's threats to kill the decedent and his physical resistance to the efforts of James Strong to stop the beating. "The uttering of threats, and the seeking of an opportunity to kill deceased constitute evidence of premeditation." 15 I.L.E. *Homicide* § 123 at 362 (1959). The Appellant had previously sought to kill his wife. The extent of the beating here and the efforts to conceal the body also support a finding of premeditation.

## V.

The Appellant's final contentions urge error in the admission of certain testimony into evidence. The first such testimony was given during cross examination of Dr. Adams by defense counsel. Apparently trying to discredit the doctor's opinion regarding the decedent's missing teeth, defense counsel embarked on a line of questioning regarding another oral surgeon and whether disagreement with him would be "just a disagreement of opinions." The doctor responded that it would be just a disagreement of opinions, but that the two opinions of his partners were also involved. Defense counsel moved to strike the further response, "My two partners agreed with me."

Defense counsel's prompt motion to strike did not state a ground of objection, nor is such a ground presented in the Appellant's brief. The failure to object on a specific ground is generally considered a waiver of the right to rely on such ground on appeal from the court's ruling, unless it is clear that the trial court considered the unspecified ground. *Jethroe* v. *State*, (1974) 262 Ind. 505, 319 N.E.2d 133.

The trial court also overruled defense objections to testimony regarding threats by the Appellant on the decedent's life and previous acts of violence by the Appellant against the decedent. The Appellant's contention urging error in these rulings is based upon *Keifer* v. *State*, (1927) 199 Ind. 10, 154

N.E. 870, and *Fulmer* v. *State,* (1967) 249 Ind. 261, 230 N.E. 2d 307. His reliance upon these cases is unexplained. *Keifer* v. *State* held that while evidence of a prior assault by the defendant might have been admissible to show malice, intention or purpose, it was error to admit testimony describing in detail the particulars of the assault and victim's condition following it. *Fulmer* v. *State* discussed the general rule excluding from evidence prior crimes by a defendant and two more exceptions, when the evidence tends to prove the identity of the perpetrator and when a plea of insanity is entered.

These cases do not support the Appellant's contention. The trial court here limited the testimony regarding prior crimes and kept it from going into too much detail. That testimony was admissible since it was to show intent, motive and purpose. *Jenkins* v. *State,* (1975) 263 Ind. 589, 335 N.E. 2d 215. The cases cited have no application whatsoever to the admissibility of the Appellant's threats to kill the decedent. Those statements fall within the traditional exception to the hearsay rule of declarations of a present state of mind or feelings. McCormick, Evidence § 249 (2d Ed. 1972). "[I]t has never been doubted that the *threats* of an *accused person* are admissible to show his doing of the deed threatened. . . ." 6 Wigmore, Evidence § 1732 at 157 (Chadbourn Rev. 1976).

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 354 N.E.2d 199.