David Lamont BOYD, Appellant,

v.

STATE of Indiana, Appellee.

No. 680S190.

Supreme Court of Indiana.

Aug. 31, 1981.

Robert H. Rideout, Boonville, for appellant.

Theodore L. Sendak, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

David Lamont Boyd was tried by a jury and convicted of robbery committed while he was armed with a deadly weapon, a class B felony, in violation of Ind.Code § 35–42–5–1. The trial court sentenced him to a term of fifteen years in prison.

This direct appeal presents five issues for review:

1. Whether the trial court erred in allowing a witness to answer a certain question and to give certain testimony.

2. Whether it was error for the trial court to admit evidence of a lineup identification.

3. Whether the trial court erred in permitting the State to introduce into evidence two photographs of the defendant.

4. Whether the trial court improperly denied a motion for a directed verdict.

5. Whether there was sufficient evidence to support the jury's verdict.

The evidence viewed in the light most favorable to the State shows that on October 17, 1978, Boyd entered a grocery store in Warrick County, near the town of Newburgh, Indiana, with a shotgun concealed under his coat. He selected several items

from the shelves and came to the counter, where the cashier stood, three times. He then came to the counter a fourth time, withdrew the shotgun, and thrust its barrel into the stomach of the cashier, Brenda Padgett, threatening to kill her and demanding all the money in the store's cash drawers and in Padgett's purse. After taking the money from the cash drawers and the purse, Boyd ordered Padgett to lie on the floor, again threatening to kill her, and he left.

1.

The trial court, over a defense objection, permitted the prosecutor to ask, and Padgett to answer, the following question on direct examination: "How many times was [Boyd] really close to you?" Boyd complains that the question, emphasizing that the robber came very close to the State's witness, was highly suggestive, prejudicial, and inflamed the passions of the jurors against him.

■ We find no merit in the contention that the question was improper. The record shows that Padgett's previous testimony had established that after Boyd had entered the store he had come up to the counter and stood across from her three times before finally approaching her and pointing the shotgun. Also, Padgett had already, under questioning, pointed out a counter or shelf in the courtroom and said that it had approximately the same depth as the counter in the store that had separated her from Boyd. The jury had a basis for determining whether the defendant had been close to Padgett or not. The question was relevant on the issue of identification to establish the quality of Padgett's opportunities to observe the robber. There was no error in the asking and answering of the question.

■ The appellant also asserts that the question should have been excluded because by asking it, the prosecutor usurped the jury's function of determining whether there was a threat of force by use of a deadly weapon. We cannot see in what way the asking of the question invaded the province of the jury. The appellant makes

no further explanation of this claim; there is no argument; no authorities are cited. We are unable to review this claim.

■ Boyd also objected to Padgett's use of the word "robbery" during direct examination when she was describing her opportunities to see the man who held up the store. He argues that the word was used at a point in the trial before the submission of any evidence that established the prima facie crime of robbery, and invaded the province of the jury. Padgett had already testified that Boyd approached the counter, drew out a shotgun, pointed its barrel at her stomach, threatened to kill her, and demanded and took the money. She also had testified that she was frightened. It is clear from the record that she used the word in its popular sense to summarize the entire incident which she had just described in detail. The use of the word did not invade the province of the jury.

2.

Appellant next asserts that a pre-trial identification procedure was impermissibly suggestive in violation of the standards for such procedures set out in *Hill v. State*, (1977) 267 Ind. 411, 370 N.E.2d 889. The police arranged for Padgett to view a lineup conducted within two weeks of the incident at the store. The lineup consisted of six black men dressed alike and having the following heights and weights:

| Subject No. 1: | 5'2", 160 pounds |
|---|---|
| Subject No. 2: | 6'1", 150 pounds |
| Subject No. 3: | 6'1", 180 pounds |
| Subject No. 4: | 5'7", 140 pounds |
| Subject No. 5: | 5'10", 195 pounds |
| Subject No. 6: | 5'9", 150 pounds |

Padgett had described the robber to the police, immediately after the incident, as being about 5'10" or 5'11" and weighing from 180 to 200 pounds. At the lineup she selected Subject No. 5, who was Boyd, as the man who robbed her. Boyd argues that the other men in the lineup were so grossly dissimilar to him in height and weight that it was a foregone conclusion that Padgett would single him out since he was the only

subject who approximated the height, weight, and general physical characteristics of the person she had described as the robber. He likens this lineup to the one discussed by the Court of Appeals in *Stacks v. State*, (1978) Ind.App., 372 N.E.2d 1201. In *Stacks*, the appellant was placed in a lineup with three other men within an hour of the commission of the crime. The victim had been told that the man the police suspected was in the lineup. Stacks was the only man with red hair and a red beard. The victim had testified at trial that none of the other men in the lineup resembled Stacks in height, weight, complexion, or color of hair. The Court of Appeals discussed the totality of the circumstances of the lineup and concluded that the victim had had an ample opportunity for recognition, and that there was sufficient basis for his testimony. In addition, the court held that because there was clear and convincing evidence of an independent basis for in-court identifications, the in-court identifications were admissible even if the lineup had been impermissibly suggestive in violation of *Stovall v. Denno*, (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; and *Norris v. State*, (1976) 265 Ind. 508, 356 N.E.2d 204.

■ We believe, after examining photographs of the lineup, that the trial court correctly overruled the objection based on a claim of an impermissibly suggestive lineup. The range of heights and weights of four of the other participants was not so out of line with the height and weight of the appellant that he was necessarily suggested to the victim as the one she should identify. See, e.g., *Young v. State*, (1979) Ind., 395 N.E.2d 772.

3.

The trial court admitted, over irrelevancy objections, two photographs of the appellant taken on October 31, 1978, at the county jail. One photograph shows Boyd with a placard hanging from a chain around his neck displaying the words, "Vanderburgh County Jail", and the date.

■ The photographs were relevant to the issue of identification. A police officer who had conducted the investigation of the crime had testified that Padgett had been unable to pick out a photograph of the appellant from a set of forty-two photographs of black males shown to her four days after the robbery. The photograph of Boyd in this array was one taken four years earlier when he was fifteen years old. The photographs at issue were introduced at the trial as a basis for comparison with the four-year-old photograph, the appearance of the appellant at the time of the incident, and a composite picture of the suspect constructed by the police based on Padgett's description.

The State was entitled to have the jury view the pictures and decide what weight to give Padgett's failure to identify Boyd from the array of forty-two photographs. The court properly admitted the photographs.

4.

At the conclusion of the presentation of the State's evidence, Boyd made, and the court overruled, a motion for a directed verdict of acquittal. Boyd asserts that this was error because the State had failed to meet the burden of proof of guilt beyond a reasonable doubt, and that permitting the case to go to the jury improperly allowed the jury to speculate on the question of the defendant's guilt. There is no argument on this point, and no authorities are cited.

■ This contention has no merit. It is manifestly the jury's job to determine whether the State had met its burden of proof. "To avoid a directed verdict the State merely has to make out a prima facie case." *Holliday v. State*, (1970) 254 Ind. 85, 87, 257 N.E.2d 679, 680. The State had made out a prima facie case. The denial of the motion was not error.

5.

■ Finally, Boyd contends that the verdict was not supported by sufficient evidence because the State failed to establish identity and failed to prove motive. Upon appellate review, this Court does not weigh the evidence nor do we resolve questions of credibility, but we will examine the evi-

dence and reasonable inferences from it that support the verdict. We will not disturb the jury's verdict as long as there is evidence of probative value from which a reasonable doubt that the defendant was guilty. *Hicks v. State*, (1980) Ind., 401 N.E.2d 702. There was sufficient evidence on the element of identification, as set out above, to support the verdict.

■ Motive is not an element of the crime of robbery and it is not required to be proven to establish criminal culpability. *Hinshaw v. State*, (1897) 147 Ind. 334, 47 N.E. 157.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.