Jim LOWERY, Appellant,

v.

STATE of Indiana, Appellee.

No. 1280S448.

Supreme Court of Indiana.

May 5, 1982.

Rehearing Denied June 29, 1982.

Lawrence D. Giddings, Lebanon, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal arising out of convictions on a three count indictment, charging two counts of murder and one count of attempted murder. The jury returned verdicts of guilty on each of the three counts, for the murders of an elderly couple living in West Point, Indiana, and the attempted murder of their housekeeper. The court found appellant guilty on each of the three counts and pursuant to the provisions of Ind.Code § 35–50–2–9 (Burns 1979) sentenced him to suffer the death penalty.

The following rulings are challenged on appeal and considered in this opinion:

1. The denial of a defense motion to sequester the jury throughout the trial.
2. The admission of a taped pre-trial statement.
3. The admission of a photograph of appellant.
4. The admission of an accomplice's plea agreement.

In addition to considering the above issues, the Court on its own considers for the guidance of the bench and bar the scope of the appellate lawyer's function in appeals from convictions resulting in the sentence of death.

The record shows the following facts. Appellant and an accomplice decided to rob Mark and Gertrude Thompson, an elderly couple living in a rural area of Tippecanoe County. Appellant armed himself with a .32 caliber revolver and set out with his partner for the Thompson home on September 30, 1979. At about 7:00 that evening, the pair entered the house trailer of the Thompson's housekeeper, which was parked near the home, and forced the housekeeper to enter the home with them. Upon confronting Mr. Thompson and having a brief exchange of words with him, appellant fired a non-fatal shot into Mr. Thompson's abdomen. Appellant directed his accomplice to guard Mr. Thompson while he sought out Mrs. Thompson, whom he found in the den and brought into the kitchen. Very shortly Mr. Thompson managed to trip a switch that set off a siren he had attached to his barn as a means of letting his neighbors know there was an emergency at his home. Appellant panicked upon hearing the siren and fired a single shot at point-blank range into Mrs. Thompson's head, killing her. He then turned to the housekeeper and fired a shot into her head. However, she had raised her hand to shield herself and the bullet had struck her hand first, thus reducing its velocity enough that it only barely penetrated her skull. She fell to the floor feigning death and survived. Appellant last went to Mr. Thompson and fired a single fatal shot into his head.

At appellant's trial, his accomplice and the housekeeper testified against him regarding the crime. His wife also testified regarding admissions he made to her about the murders. These admissions were made in front of the accomplice immediately after the pair returned to appellant's home in Crawfordsville.

I.

The trial court denied a pre-trial defense motion for jury sequestration during the trial. The right asserted is based upon Public Law 1905, ch. 169, § 263, Ind.Code § 35–1–37–2, which provides:

"When the jurors are permitted to separate, after being impaneled, and at each adjournment, they must be admonished by the court that it is their duty not to converse among themselves, nor suffer others to converse with them, on any subject connected with the trial, or to form or express any opinion thereon, un-

·til the cause is finally submitted to them."

Referring to this statute this Court has said:

"At common law it was not permissible for a jury to separate even with the defendant's consent; but under our statute above quoted, it has been held and is the general practice that a jury be allowed to separate with the defendant's consent. *McCorkle v. State* (1859), 14 Ind. 39." *Faulkner v. State*, (1923) 193 Ind. 663, 669, 141 N.E. 514.

Separation of the jury proscribed in this statute occurs when jurors are permitted to return alone to the general community or to go to their respective homes, during the trial, after being duly admonished, and prior to the final charge by the court and the commencement of deliberations. The defendant's consent to separation will be presumed from a record of proceedings which is silent. *Faulkner v. State, supra.*

■ The application of this statute in cases in which the defendant faces the possibility of the imposition of the penalty of death has remained static since its enactment in 1905 to the date of this opinion. A timely request by the defendant for the jury to be kept together during the trial in a capital case places a mandatory duty upon the trial judge to grant the request. There is in such cases no discretion reposed in the trial court to deny that request, and no burden upon the defendant at trial or on appeal to make a showing of cause or prejudice. *Whitaker v. State*, (1960) 240 Ind. 676, 168 N.E.2d 212. Indeed, no case has presented itself in which a defendant has been ordered put to death by an American court as punishment for crime upon the verdict of a jury which was permitted to separate and return to commingle in the general community during the trial, over the timely objection of the accused. We therefore hold that it was reversible error for the court to deny the motion on the basis asserted and that consequently appellant must be granted a new trial.

Because they may arise on retrial, we also address the following issues.

2.

■ At trial the witness Barbara Lowery testified that she gave police a taped statement before trial but could not recall all of what she had said. Subsequently, the statement was offered through a police officer, and admitted over hearsay objection. The ruling was correct. The statement was not hearsay, as contended, because offered and admitted after the out-of-court asserter had left the witness stand. Incriminating admissions by appellant and his accomplice formed the substance of the taped statement. This same matter was part of her trial testimony. It therefore follows that the out-of-court asserter was in court and available for full and effective cross-examination of the basis of her pre-trial statement. *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482; *Flewallen v. State*, (1977) 267 Ind. 90, 368 N.E.2d 239; cf. *California v. Green*, (1970) 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489.

3.

■ State's Exhibit 144, a photograph of appellant taken on the day of his arrest some two days following the charged crimes was admitted over objection. It is patent from the information included on it, that it was the product of police procedures. The photograph was relevant and not unduly prejudicial. *Boyd v. State*, (1981) Ind., 425 N.E.2d 85; *Gray v. State*, (1978) 268 Ind. 177, 374 N.E.2d 518. The relevance of it to the issue of identification was not simply gratuitous. Appellant appeared at trial with a beard. The testimony of witnesses and the photograph portrayed appellant as having no beard. The photograph provided the trier of fact with a means of comparison. It was not unduly prejudicial by reason of the implication arising from it that appellant had been arrested as there was other direct testimony of that fact. The picture is a single frontal view and we see nothing peculiarly demeaning or derogatory in it.

4.

■ The trial court admitted the plea bargain agreement between the State and

appellant's accomplice, struck in exchange for his testimony and plea of guilty. Part of the agreement was the condition that the accomplice pass a polygraph examination regarding the details of the crime. Appellant now objects to the admission of the agreement because of the reference therein to the polygraph examination. Appellant concedes, however, that the jury never saw the agreement or knew that the polygraph examination was administered. Any issue regarding the propriety of the admission of the agreement on the basis urged is moot on appeal.

5.

■ There is another question presented by this appeal which needs to be directly addressed, and it involves the extent of the obligation of appellate counsel representing a defendant who has received the sentence of death to marshal arguments against the application of the death sentence. Appellant's counsel takes the position that this Court's mandatory review of death sentences is conducted outside the adversarial process, relying upon our opinion in *Judy v. State*, (1981) Ind., 416 N.E.2d 95, and has concluded that he has minimal obligation to participate in the process on behalf of his client. In the *Judy* case, the defendant appeared personally before this Court and voluntarily and knowingly waived all right to appeal from his convictions, and instructed his lawyers to take no action in any regard on his behalf in the appeal and notified the court that he personally would take no action on his own behalf in the appeal. There was a waiver of the right to counsel. The court responded by shouldering the burden normally to be assumed by the appellant. In the present case appellant Lowery has given no waiver of appeal and no waiver of counsel. He therefore, unlike the defendant in the *Judy* case, is entitled to the fullest assistance of counsel at every critical stage of this appeal, including that stage at which we review the death sentence under our mandatory obligation to do so. Appellate counsel in capital cases must present arguable legal points on behalf of his client facilitative of our review of the death sentence.

The convictions are reversed and a new trial ordered.

HUNTER and PRENTICE, JJ., concur.

GIVAN, C. J., dissents with opinion in which PIVARNIK, J., concurs.

GIVAN, Chief Justice, dissenting.

I respectfully dissent as to Issue I. I concur as to all other issues. The majority claims the trial court erred in denying appellant's Motion for Jury Sequestration. It is appellant's contention our case law makes it mandatory upon the trial court to sequester the jury upon motion of the defendant in any case where the defendant faces the death penalty. In support appellant cites *Cobb v. State*, (1980) Ind., 412 N.E.2d 728. In that case, Justice Pivarnik stated: "Sequestration of the jury is mandatory only when the defendant faces the potential sentence of death." *Id.*, 412 N.E.2d at 732.

An examination of the cases reveals clearly at one time the law was that in felony cases of all kinds the jury could not be separated once the trial had begun without the consent of the defendant. *See, Silverman v. State*, (1927) 199 Ind. 225, 156 N.E. 549; *Faulkner v. State*, (1923) 193 Ind. 663, 141 N.E. 514; *Anderson v. State*, (1867) 28 Ind. 22; *Quinn v. State*, (1860) 14 Ind. 589. Then in *Whitaker v. State*, (1960) 240 Ind. 676, 168 N.E.2d 212, a death penalty case, Justice Jackson writing for the majority, held the common law rule was a sound one and should not be changed. Justice Arterburn in dissent agreed with the majority that in capital cases it was reversible error to deny the defendant's timely motion for jury sequestration. However, he took the position that in non-capital cases the matter of jury sequestration should be discretionary with the trial court and such decisions not to sequester the jury should be reversible error only upon a showing of prejudice.

Subsequently the rule proposed by Justice Arterburn for non-capital cases in *Whitaker, supra,* became the law. The new rule

was first adopted without acknowledgement of prior case law on the subject in *Packwood v. State,* (1963) 244 Ind. 585, 193 N.E.2d 494. There this Court stated:

"Appellants assert ... 'the jury cannot be permitted to separate over the objection of the defendant.' However, appellants cite no authority in support of this rule. In any event, the matter of the separation of the jury during trial is ordinarily discretionary with the trial court. Any error with respect thereto must rest upon an abuse of discretion by the trial court. C.J.S. *Trials* § 45 p. 113." *Id.* at 591, 193 N.E.2d at 497.

Since *Packwood, supra,* there have been frequent reaffirmations of the rule that in non-capital cases the decision to sequester the jury is discretionary with the trial court and is reversible error only where abuse of discretion is shown. *See, e.g., Cobb, supra; Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228; *Norton v. State,* (1980) Ind., 408 N.E.2d 514; *Owen v. State,* (1978) 269 Ind. 513, 381 N.E.2d 1235; *Vaughn v. State,* (1978) 269 Ind. 142, 378 N.E.2d 859; *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103; *Kincaid v. State,* (1976) 265 Ind. 345, 354 N.E.2d 199; *Greenwalt v. State,* (1965) 246 Ind. 608, 209 N.E.2d 254.

However, the rule that jury sequestration is required upon timely motion of the defendant in capital cases is still the law in Indiana. Today I believe the time has come to overrule *Whitaker, supra,* in that regard. The standard for determining the defendant's right to a sequestered jury should be the same as in non-capital cases. That is, the decision whether or not to sequester the jury should be discretionary with the trial court and reversible error only where there has been an abuse of that discretion. The kind and amount of pretrial and trial publicity that prejudices a jury against a defendant, if they are exposed to that publicity, cannot be presumed to exist in capital cases to any greater extent than in non-capital cases. I feel it is proper to require the same showing of prejudice by a defendant facing the death penalty that is required of the defendant in a non-capital case.

In the case at bar, the record is devoid of any evidence of excessive publicity about the trial that may have influenced the jury in reaching its verdict. Additionally, the trial judge repeatedly admonished the jury to disregard any publicity about the case prior to recesses in the trial. Upon commencement of proceedings each day, he questioned the jury as to whether any of them had read or heard any media accounts of the trial and proceeded only after receiving the appropriate negative responses. Given the absence of evidence in the record of any excessive trial publicity to which the jury could have been exposed and the precautions taken by the trial judge to assure the jury had not been exposed to any trial publicity at all, I see no prejudice to appellant that would lead to the conclusion that the denial of the sequestration motion was an abuse of discretion. I would hold there was no error in not sequestering the jury.

PIVARNIK, J., concurs.