Kevin CONNER, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8904–CR–00314.

Supreme Court of Indiana.

Oct. 24, 1991.

L. Craig Turner, Boberschmidt Miller O'Bryan & Turner, P.A., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant Conner was convicted of three counts of murder by a Marion Superior Court jury on October 7, 1988. Subsequently, the jury recommended that he suffer the penalty of death for such murders. The trial court accepted the jury's recommendation and sentenced Conner to death for two of the three murders. This direct appeal followed.

Conner alleges that 15 errors occurred prior to, during, and subsequent to the trial. Conner alleged that the court acted improperly in the following instances:

(1) Denying individual sequestered jury voir dire.

(2) Deleting three questions from defendant's tendered jury questionnaire.

(3) Denying defendant's motion to dismiss the death penalty count and sentencing defendant to death.

(4) Admitting defendant's confession.

(5) Denying defendant's motion for severance.

(6) Admitting evidence of defendant's prior threats and acts of violence against one of the victims.

(7) Admitting evidence of defendant's earlier possession of weapons.

(8) Admitting evidence of defendant's nicknames.

(9) Instructing the jury of their advisory role in sentencing.

(10) Denying defendant's motion for continuance of the sentencing hearing.

(11) Ruling that the evidence was sufficient to support the convictions.

(12) Ruling that the evidence was sufficient to support the imposition of the death penalty.

(13) Ordering defendant committed to the Department of Corrections between sentencing and the court's ruling on the motion to correct errors.

(14) Permitting the State to file an amended information.

(15) Denying funds to the defendant for a polygraph examination.

Having reviewed the transcript in light of the alleged errors, we affirm Conner's convictions for murder and sentence of death.

The facts in support of the convictions are that during the early morning hours of January 26, 1988, Conner, Tony Moore, Bruce Voge, and Steve Wentland were drinking in Tony Moore's house. Bruce Voge remained at the house while Conner, Moore, and Wentland went for a drive in Wentland's automobile. Wentland drove with Moore in the passenger seat and Conner in the back. During the drive, an argument began which resulted in Moore striking Wentland with Conner's knife, causing Wentland to abandon the car and run. Conner, armed with the knife, pursued Wentland on foot while Moore took over the driving of the car and ran Wentland down. While Wentland was down, Conner struck him several times with his fists and stabbed him multiple times with the knife, killing him.

Conner and Moore drove from the scene and went to City Enterprises, Conner's place of employment. There, they woke up Conner's employer and were allowed access to the warehouse area. They began arguing about what had occurred and what future course of action to take and, during the argument, Conner, who had obtained possession of his sawed-off shotgun, shot and killed Moore. The shotgun blasts awakened Conner's employer who confronted Conner as he left the warehouse area. Conner told his employer that he "had to off Tony." Conner left the warehouse and returned to Tony Moore's house where he shot and killed Bruce Voge while Voge was lying on the couch in the living room.

Following these three killings, Conner enlisted the help of various friends to dispose of Moore's body, abandon Wentland's automobile, and leave town. He was apprehended in Texas and returned to Indiana to face charges of murder.

## I. Individual Sequestered Jury Voir Dire

■ Conner urges that the trial court erred in denying his request for individualized, sequestered voir dire of prospective jurors. However, he does not say how, specifically, he was prejudiced by the failure to hold individualized jury voir dire. Instead, he conjectures that conducting voir dire in the presence of other jurors and the press inhibits openness and honesty and, thus, may adversely affect the jury selection process.

This Court consistently has rejected the notion that individualized, sequestered voir dire is required in any case, death penalty cases included. *Lowery v. State* (1989), Ind., 547 N.E.2d 1046, 1049, *cert. denied* (1990), — U.S. —, 111 S.Ct. 217, 112 L.Ed.2d 176; *Woods v. State* (1989), Ind., 547 N.E.2d 772, 791, *petition for cert. filed* Jan. 1, 1991. The trial court, of course, retains discretion to adopt such a procedure should special circumstances surface to so indicate. Here, however, there is no evidence in the record of any highly unusual or potentially damaging circumstances to warrant such sequestered voir dire.

## II. Deletion of Three Questions from Defendant's Tendered Jury Questionnaire

■ Conner argues that the trial court erred in deleting three questions from his tendered jury questionnaire which the trial court submitted to the jurors to be completed prior to conducting voir dire examination. These questions addressed the prospective jurors' attitudes toward the role and responsibility of judges, prosecutors and defense counsel; the jurors' beliefs as to the most important institutions in our society; and, the prospective jurors' attitudes toward the law that defendants are accorded many constitutional rights. Conner asserts that these matters are "most

critical" to determining the jurors' attitudes about the death penalty. He does not argue, however, that defense counsel did not fully explore prospective jurors' attitudes toward the death penalty. In fact, the record clearly shows that counsel conducted a lengthy and complete voir dire examination of all potential jurors and received direct and straightforward responses.

The trial court has broad discretionary power to regulate the form and substance of voir dire. We will reverse only upon a showing of a manifest abuse of such discretion and a denial of a fair trial to a defendant. *Games v. State* (1989), Ind., 535 N.E.2d 530, 538, *cert. denied* (1989), 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158. No such showing has been made in the instant case and a review of the record fails to show a denial of a fair trial to Conner.

### III. *Dismissal of Death Penalty Count and Sentencing of Defendant to Death*

Conner alleges that the trial court erred in denying his motion to dismiss the death penalty count and in imposing the sentence of death. He argues that the Indiana death penalty statute is unconstitutional under both the Indiana and United States constitutions. He premises his constitutional arguments on five separate grounds. These grounds and our responses to them follow.

1. The prosecutor's discretion to charge (or dismiss) the death penalty count renders the penalty arbitrary and capricious and, therefore, cruel and unusual.

 ■ Under our State's system of criminal justice, the prosecutor always has been allowed broad discretion in representing the people of the State in determining what crimes to prosecute and in requesting the imposition of various sentences. We reject the argument that the legislature's continued placement of such discretion on the prosecutor to determine which cases warrant the request for the imposition of the death penalty renders the penalty unconstitutional. *Coleman v. State* (1990), Ind., 558 N.E.2d 1059, 1065, *cert. denied*

(1991), —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075; *Games*, 535 N.E.2d at 537. There is nothing in this record which leads us to believe that the prosecutor abused his discretion in seeking the death penalty for a triple murder.

2. That the judge can override the jury's recommendation against the death penalty renders the penalty arbitrary and capricious and, therefore, cruel and unusual.

 Here, the jury recommended that the sentence of death be imposed on Conner. The judge did not override a recommendation against the death penalty. The argument, therefore, is not relevant to the facts of this case.

3. The jury's lack of guidance in determining when aggravating factors outweigh mitigating factors renders the statute unconstitutional.

 ■ The Indiana death penalty statute provides that the jury shall consider specifically-identified mitigating factors and further provides that the jury may consider as mitigating factors "any other circumstances appropriate for consideration." This allows a defendant wide latitude in presenting evidence that might pursuade a jury to recommend against the death penalty even though such evidence would not be relevant to the enumerated factors set forth in the statute. A jury, which has just heard the evidence of guilt or innocence during the guilt phase of the trial, is well equipped to weigh aggravating versus mitigating factors in determining whether to recommend for or against the imposition of the death penalty. We have previously rejected the claim that the statute does not sufficiently guide the jury in weighing such factors. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, 91–92, *cert. denied* (1988), 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158. There is nothing presented in this case which causes us to now accept such an argument.

4. The statute does not sufficiently detail appellate review or require comparative proportionality review.

 ■ This argument has also been previously answered. *Games*, 535 N.E.2d at

537. The statute's requirement that this Court specifically review the imposition of the death penalty provides for adequate appellate review and it is for this Court to properly apply constitutional law in conducting such review. Ind.Code § 35–50–2–9. The failure of the statute to detail the nature of that constitutional review does not render the statute unconstitutional.

5. The statute fails to properly narrow the class of homicides which are eligible for the death penalty.

■ This argument has also been rejected by this Court. *Huffman v. State* (1989), Ind., 543 N.E.2d 360, 378–79, *cert. denied* (1990), — U.S. —, 110 S.Ct. 3257, 111 L.Ed.2d 767; *overruled on other grounds, Street v. State* (1991), Ind., 567 N.E.2d 102. There has been nothing presented in this case to show that Conner's commission of three separate independent murders over a period of several hours could possibly be considered as placing him in a class of persons which the constitution would declare to be ineligible for the imposition of the death penalty.

The trial court committed no error in denying Conner's motion to dismiss the death penalty count and the trial court's sentence imposing death is not cruel and unusual punishment violative of either the Indiana or United States constitutions.

## IV. *Admission of Defendant's Confession*

■ Conner argues that the court erred in admitting his confession into evidence. He maintains, and testified at the suppression hearing, that the police continued to question him after his request for an attorney. Had that been the only evidence adduced at the suppression hearing, his argument, that his subsequent confession should be suppressed, would be correct. However, two other witnesses, who were present during the questioning, Detectives Green and Stamm, also testified at the suppression hearing. Both testified that Conner had not requested an attorney at any point prior to, during, or subsequent to his questioning. The trial court obviously believed the police officers and disbelieved

Conner's testimony. Where the evidence conflicts we, of course, will not weigh the evidence or judge the credibility of the witnesses, but will only determine if the record contains evidence of probative value to support the court's ruling. Here, the detectives' testimony as well as the videotaped confession itself constitutes probative evidence supporting the trial court's determination that the detectives did not impermissibly examine Conner after his alleged request for an attorney. There was no error in admitting the videotaped confession into evidence.

## V. *Defendant's Motion for Severance of Counts*

■ Conner claims that the three murder counts should have been severed and tried separately. The facts reveal that the murder of Tony Moore occurred in the course of an argument over what to do following the murder of Steve Wentland, and that the murder of Bruce Voge occurred as Conner was trying to arrange for the disposal of Moore's body. These murders all occurred within a short period of time and were all connected with one another. They were not joined solely because they were of similar character, but were properly joined because they were connected and committed during one crime spree. The trial court properly determined that trying the three counts together would not be too confusing and complex for the jury to distinguish between the separate counts and a review of the record does not reveal an exceedingly complex or confusing trial in violation of Ind.Code § 35–34–1–11.

## VI. *Evidence of Prior Threats and Acts of Violence*

■ Conner sought an order in limine prohibiting the State from introducing his prior threats and acts of violence. This motion was granted except as to the victim, Tony Moore. Conner asserts that the admission of this evidence of previous threats and violence directed toward Moore was erroneous. The evidence which was adduced was that, on a previous occasion, Conner had threatened Moore's life. This

evidence was not objected to by Conner and, thus, is waived. As we have stated in *Collins v. State* (1984), Ind., 464 N.E.2d 1286, 1289–90, absent a contemporaneous objection when evidence is introduced, error in denying a motion in limine is insufficient to preserve error. However, even had an objection been imposed, the evidence was admissible to show Conner's doing of the deed which he had previously threatened. *Kincaid v. State* (1976), 265 Ind. 345, 353–54, 354 N.E.2d 199, 205, *cert. denied* (1977) 430 U.S. 972, 97 S.Ct. 1660, 52 L.Ed.2d 365.

## VII. *Evidence of Defendant's Earlier Possession of Weapons*

■ Conner similarly argues that the denial of his motion in limine concerning his prior possession of weapons prejudiced him. Again, no objection to evidence concerning Conner's previous carrying of the knife and sawed-off shotgun was interposed at trial and, therefore, any error is waived. *Collins, supra.* On the merits, however, the evidence admitted here showing that Conner possessed the weapons used in the killings was certainly relevant and admissible.

## VIII. *Evidence of Defendant's Nicknames*

■ Conner argues that the denial of his motion in limine seeking to have evidence of his nicknames or street names excluded prejudiced him. He cites no point in the record where such testimony was introduced nor that any objection was interposed at trial. Therefore, even if a witness had referred to him by a nickname at trial, the lack of objection waives such issue. *Collins, supra.*

## IX. *Advising the Jury on Their Role in Sentencing*

■ Conner argues that the denial of his motion in limine seeking to prevent the prosecutor from arguing to the jury that their sentencing recommendation was advisory and that the final sentencing decision lay with the trial court was prejudicial to him. The argument that the jury should not be told of their advisory function because to do so does not inform the jury of the standard for an override of a non-death recommendation is without merit. In the present case neither the court nor the prosecutor during voir dire, argument, or instructions violated the rule set forth by us in *Wallace v. State* (1990), Ind., 553 N.E.2d 456, 467–70, *cert. denied* (1991), — U.S. ——, 111 S.Ct. 2250, 114 L.Ed.2d 491. None of the information imparted to the jury told the jury that "they were relieved of concern because the ultimate responsibility rested with the judge or this Court." In reviewing the record, it appears to us that the jury was properly instructed on their sentencing role under our statute and that no error resulted from the trial court's denial of Conner's motion in limine on this issue.

## X. *Defendant's Motion for Continuance of the Sentencing Hearing*

■ Conner asked to have the sentencing hearing continued because he wished to present a new version of the events leading to his conviction and to take a polygraph test to determine his veracity. The denial of a motion for continuance is within the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Woods v. State* (1989), Ind., 547 N.E.2d 772, 788. A decision by Conner, after a jury had convicted him of three murders and recommended that the death sentence be imposed, to offer a new version of events does not impose on the trial judge an obligation to grant a continuance. The court did not abuse its discretion in denying such a motion for continuance.

## XI. *Sufficiency of the Evidence to Support the Convictions*

■ Conner asserts that the evidence was insufficient to support the convictions. As to the murder of Steve Wentland, he argues that there was insufficient evidence to show that he, rather than Tony Moore, killed Wentland. The evidence, however, was that he was identified as the one who repeatedly stabbed Wentland, and his con-

fession stated that he stabbed Wentland. Additionally, the pathologist testified that the cause of death was a stab wound. There was sufficient evidence to support this conviction.

As to the victim Tony Moore, again Conner confessed to that killing and such confession was corroborated by testimony that he told his employer that he had to "off Tony". The evidence was sufficient to support the conviction on this count.

As to the killing of Bruce Voge, Conner confessed to such killing and such confession was corroborated by testimony from others that Conner stated to them that he had killed three people. There was sufficient evidence to support the conviction for this murder as well.

The confession and the corroboration clearly show sufficient evidence to support convictions for each of the three murders charged.

## XII. Sufficiency of Evidence to Support the Imposition of the Death Penalty

■ Conner urges that there was insufficient evidence to support the imposition of the death penalty here because the evidence of aggravating circumstances did not outweigh the mitigating circumstances beyond a reasonable doubt. We disagree. The aggravating circumstances alleged to support the death penalty were that, at the time of killing Moore and Voge, Conner had committed another killing. There was ample evidence to support this aggravating factor as more detailedly set forth above. In reviewing the record of the penalty phase of the trial as well as the court's sentencing order, we hold that the trial court properly considered both aggravating and mitigating circumstances and properly imposed the death penalty in accordance with the Indiana act.

## XIII. Committment of Defendant to Department of Corrections Following Sentencing

■ Conner argues that the trial court erred in denying his request to stay in the Marion County Jail until his motion to correct errors was ruled upon. He argues that he was prejudiced because he was deprived of the opportunity to thoroughly prepare the motion to correct errors with counsel and to review the trial court's ruling in preparation for appeal. He does not explain what would have been done differently or why such a review could not have been conducted while he was imprisoned in the Indiana State Prison. No error or possible prejudice has been shown.

## XIV. The Amended Information

■ Conner argues that the trial court's allowing the prosecutor to amend, on February 5th, the death sentence information first filed on February 3rd, 1988, prejudiced him. In view of the fact that the trial commenced approximately eight months after the amended information was filed, we fail to see how Conner did not receive ample notice and opportunity to prepare to meet the death penalty count. Again, no prejudice has been shown and no error can be premised upon the trial court's ruling.

## XV. Denial of Funds for a Polygraph Examination

■ Conner urges that he was improperly denied funds to obtain a polygraph examination. As noted above, at the sentencing hearing he sought to present a new account of the events leading to his conviction and asked for funds to conduct a polygraph examination to bolster his credibility. The provision of funds to employ an expert is within the sound discretion of the trial court. *Hough v. State* (1990), Ind., 560 N.E.2d 511, 516. No abuse of that discretion has been shown, especially in view of the law that the results of a polygraph examination are not even admissible in Indiana absent stipulation of all parties. *Lewis v. State* (1985), Ind., 483 N.E.2d 43, 45.

## CONCLUSION

For all of the reasons set forth above, we hereby affirm Conner's convictions for murder and the trial court's sentencing of Conner to be executed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

Appellant was convicted on three separate counts of murder, which separately charged the killing of first Wentland by stabbing, then Moore by stabbing and shooting and finally Voge by shooting. All three killings were on the same morning within approximately a two hour period and at different locations on the south side of Indianapolis. The jury recommended death for the killing of Moore and for the killing of Voge. The trial judge imposed death twice, once for the killing of Moore and again for the killing of Voge.

The lone specific aggravator involved in each is I.C. 35–50–2–9(b)(8) which states that "[t]he defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder." This aggravator is applicable in cases involving double or multiple murders for which the defendant is tried in a single proceeding. *Hough v. State* (1990), Ind., 560 N.E.2d 511.

The trial court specifically found that it had been proved beyond a reasonable doubt that appellant "knowingly and intentionally" killed each of the three men. With respect to the aggravators, the trial court found that it had been proved beyond a reasonable doubt that the murder of Voge had been preceded by the "knowing and intentional killing" of Moore, and that the murder of Moore had been preceded by the "knowing and intentional killing" of Wentland.

The court found a single mitigating factor, namely that appellant had held steady employment. The record, including appellant's confession, evidence of his admissions of guilt to others, the testimony of appellant's employer and much corroborating physical evidence, support these findings and the conclusion that the killings of Voge and Moore were motivated by a desire to eliminate them as witnesses who might provide evidence against him in the killing of Wentland.

There was evidence that appellant was an alcoholic and that he had a considerable amount to drink on this day. However, the evidence does not command the conclusion that his level of intoxication at the time of his killing of Moore and Voge was entitled to weight as a mitigating circumstance. Psychiatric examination revealed no mental disease or defect. Appellant was twenty-two years old and had no significant history of prior criminal conduct. However, this mitigator is reduced to the lower range by the evidence that within the year immediately preceding these killings, he often armed himself with his hunting knife or his sawed off shotgun, and menaced his acquaintances with both. He once held his gun to the head of Moore and threatening to kill him, and he once pointed the gun at his girl friend in her apartment and deliberately fired it at her, missing her intentionally and then beating her.

Appellant appeals from the sentencing decision of the trial court, specifically claiming that the Judge ignored significant mitigating evidence, including evidence of:

1. his interest and abilities in drawing and writing.

2. his generosity such as helping Kim Voils to pay the rent.

3. the loss of his father.

4. his genuine remorse for these incidents.

I find mitigating weight in the low range in the first suggested category and none in the remaining three. Appellant was receiving sexual favors from Voils at the time he provided her money, the loss of his father was remote in time to this criminal conduct, and there is insufficient evidence in the record to support a finding of the existence of genuine remorse.

In sum, the weight of the aggravator in each of these two cases, i.e., in the case of the killing of Moore and the killing of Voge, is at a high range, while the mitigators together rise no higher than medium range. I therefore find that the total mitigating circumstances are outweighed by the aggravating circumstance in each

case, and that the sentences of death as envisioned in the statute are appropriate.