Jim LOWERY, Appellant,

v.

STATE of Indiana, Appellee.

No. 32S00–9008–PD–542.

Supreme Court of Indiana.

Oct. 4, 1994.

Brent Westerfeld, Monica Foster, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a judgment denying post-conviction relief. In this post-conviction proceeding below, appellant Jim Lowery unsuccessfully challenged his conviction for the knowing and intentional murder of Mark Thompson, his conviction for the knowing and intentional murder of Gertrude Thompson, and his conviction for the attempted murder of Janet Brown. He also unsuccessfully challenged the sentence of death imposed on the basis of separate counts alleging as to each killing the capital aggravators authorized by Ind.Code § 35–50–2–9(b)(1), intentional killing in the course of an attempted burglary and by I.C. § 35–50–2–9(b)(8), the commission of another murder. We hold that the trial court committed fundamental error in convicting Lowery of attempted murder. We reverse the decision of the post-conviction court denying post-conviction relief with respect to the attempted murder conviction and the resulting sentence, and remand this case to the post-conviction court. However, we affirm the post-conviction court's decision denying Lowery's post-conviction relief petition challenging his convictions and death sentences for the murders of Mark and Gertrude Thompson. In his second trial, the trial court had imposed the death sentence after considering a recommendation of such penalty by the jury. On direct appeal in *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, this Court considered fifteen separate allegations of error and affirmed each conviction and sentence that resulted from that second trial. Earlier, this Court had reversed convictions upon these same charges and had ordered the second trial. *Lowery v. State* (1982), Ind., 434 N.E.2d 868.

Lowery and James Bennett plotted to commit a crime to obtain money. Lowery stated to Bennett that Lowery "knew where [they] could get some easy money." Bennett drove Lowery to the Thompson residence. Both men were armed. Lowery entered a nearby trailer where Janet Brown was staying. Brown had met Lowery previously. At gunpoint, Lowery forced Brown to accompany him to the Thompson home. When Lowery encountered Mark Thompson, Lowery stated, "This is a hold-up." Thompson replied, "You don't want to do this now Jim." Lowery shot Thompson in the stomach. Lowery proceeded to shoot Gertrude Thompson in the head. He next attempted to shoot Brown in the head as well, but Brown managed to divert the shot with her hand. Then, Lowery shot Mark Thompson again, this time in the head. Brown called the police for help after Lowery and Bennett fled. Mark and Gertrude Thompson both died from the gunshot wounds to the head. Janet Brown survived and identified appellant Lowery at trial.

The petition of appellant Lowery for post-conviction relief was based upon a plethora of grounds and issues. A hearing was held at which evidence was offered in support of such grounds. That evidence is considered below with the issues. Following the hearing, the Hendricks Circuit Court, Thomas Milligan, Special Judge, denied the petition. Lowery appeals the denial of his petition for post-conviction relief.

## ISSUES

On appeal, Lowery raises the following claims for our consideration. The issues, as Lowery presents them, are:

1. Whether admission of a witness's prior recorded testimony was error, where the State did not do everything reasonable to make that witness available.

2. Whether the prosecutor violated Lowery's right to fundamental due process, where the prosecutor, who was friends with the victims in this case, filed a capital allegation without the utilization of a grand jury or adversarial probable cause hearing.

3. Whether the prosecutor violated Lowery's right to a fundamentally fair trial and reliable sentencing determination, where the prosecutor misstated the evidence and the law, and attempted to inflame the passions and emotions of the jury in both phases of the trial.

4. Whether the trial judge violated Lowery's right to a fair trial, where the trial judge referred to a photo of Lowery, which had been ruled to be inadmissible in the guilt phase of Lowery's trial, as a mug shot and

thereby suggested that Lowery had a criminal history.

5. Whether Lowery was denied fundamental due process, where the trial court permitted the selection of alternate jurors by lot at the close of the evidence in the guilt phase.

6. Whether the trial court committed fundamental error, where the trial court failed to instruct the jury on all of the essential elements of attempted murder.

7. Whether the trial court denied Lowery fundamental due process of law, where the court entered judgment of conviction on the jury's findings of guilt of attempted murder "as charged," and where the charging information in the case did not properly allege attempted murder.

8. Whether Lowery's trial court entered a sentence in violation of Indiana law, where the sentencing judge failed to state the aggravating circumstances justifying a sentence above the presumptive term of imprisonment.

9. Whether the trial court denied Lowery's right to fundamental due process and his right to counsel, where the trial court refused to transport Lowery to the local jail until one week before his trial began.

10. Whether Lowery was denied his right to effective assistance of counsel, where trial counsel failed to challenge the admissibility of identification evidence, to impeach the State's crucial eyewitness, and to object to misconduct and errors occurring before and during Lowery's trial.

11. Whether Lowery was denied fundamental due process of law and a reliable sentencing determination, where the jury was repeatedly told that their decision regarding the death penalty was only advisory.

12. Whether the subsection (b)(1) aggravator of Indiana's death penalty statute is unconstitutional as applied in Lowery's case, where the felony-aggravator was not subject to the requirements of proof in the guilt phase of his trial.

13. Whether Lowery was denied fundamental due process and a reliable sentencing hearing, where the trial court did not instruct the jury regarding the nature and function of mitigating circumstances.

14. Whether Lowery was denied fundamental due process, where this Court has failed to adopt a procedural mechanism to review sentences of death as to proportionality, and where the appellate rules for review of sentences are insufficient to provide the statutory and constitutionally required review.

15. Whether the post-conviction court denied Lowery a fair post-conviction hearing, where the post-conviction court denied Lowery's claim that Indiana's electric chair is in such disrepair that it violates state and federal constitutional proscriptions against cruel and unusual punishment.

16. Whether the trial court denied Lowery fundamental due process, where the trial court found an aggravating circumstance that by law the jury could not have considered in making its sentencing decision.

17. Whether Lowery was denied his sixth and fourteenth amendment right to effective assistance of counsel in the penalty phase of his trial by the acts and omissions of counsel.

18. Whether Lowery's right to effective assistance of counsel on his direct appeal was denied, where appellate counsel failed to request the transcript of jury selection and failed to present fundamental errors to this Court.

## DISCUSSION

■■■ On post-conviction relief, the petitioner must justify raising a ground for relief from conviction or sentence outside the normal trial and appeal processes. The post-conviction relief process is not a substitute for a direct appeal, but is a process for raising issues not known at the time of the original trial or for some reason not available to the defendant for direct appeal. *Wallace v. State* (1990), Ind., 553 N.E.2d 456. Post-conviction actions are special, quasi-civil remedies whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal. *Berry v. State* (1985), Ind., 483 N.E.2d 1369. Uncorrected errors of law that were available to the defendant at the time of

direct appeal, but are first raised in a petition for post-conviction relief, are not available in the post-conviction action. *Weatherford v. State* (1987), Ind., 512 N.E.2d 862. Also, this Court has held that issues already adjudicated in the appellate process are unavailable to a petitioner for post-conviction relief. *Smith v. State* (1993), Ind., 613 N.E.2d 412; *Adams v. State* (1982), Ind., 430 N.E.2d 771. An issue that is raised on direct appeal and is determined adverse to appellant's position is *res judicata* in post-conviction proceedings. *Grey v. State* (1990), Ind., 553 N.E.2d 1196; *cf. Kiger v. State* (1989), Ind., 537 N.E.2d 501 (defendant could not relitigate issue of sufficiency of evidence that had already been decided on direct appeal through post-conviction procedures, under principles of *res judicata* ). When reviewing the denial of a petition for post-conviction relief, our standard "does not allow us to weigh the evidence or judge the credibility of the witnesses. It requires the petitioner to establish that the evidence as a whole leads unmistakably to a decision in his favor." *Burris v. State* (1990), Ind., 558 N.E.2d 1067, 1069. Further, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

■ Also, in his petition for post-conviction relief, Lowery raises some issues that he had not addressed in his direct appeal, but appear to have been available and unasserted during the appellate process. The State has chosen to address these issues on the merits, rather than asserting procedural default. Because the State argues the merits of these issues, and because the post-conviction court reviewed these issues on the merits, we will decide the issues on the merits as well. *See Wallace*, 553 N.E.2d 456. Again, we will address those arguments individually.

### 1. Admission of Prior Recorded Testimony

■ At the second trial of these charges of murder and attempted murder, the trial court over objection admitted a transcript of sworn testimony of the accomplice James Bennett. The sworn testimony had been given orally in court at appellant's first jury trial on these same charges with a full opportunity for cross-examination. Appellant claims as a ground for post-conviction relief that the trial court erred when it admitted the transcript. The post-conviction court rejected the ground, deciding that the ground was raised and decided in the direct appeal, and therefore was *res judicata.*

The unavailability rule applicable to the State's use of the transcript has its foundation in the Confrontation Clauses of the United States and Indiana Constitutions, and the state hearsay rule. *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); IND. CONST. art. I, § 13; Ind.R.Evid. 804(b)(1). Bennett was serving a sentence for his role in the murders at the time of the second trial, pursuant to a plea agreement. He was transported by the State to the trial, called to the witness stand, and there persisted in refusing to testify, despite his prior agreement to do so, and despite a court order to do so. The State refused to meet his demand for a better deal in return for testifying. At the post-conviction hearing, it was shown for the first time that Bennett had been amenable to threats of further prosecution, but no such threats had been made by the State.

In the direct appeal, appellant challenged the trial court's ruling that the State had satisfied the unavailability rule. This Court held that the ruling was not error after considering several bases supporting the claim. We hold that the new supporting argument for the same claim, developed in the post-conviction proceeding, is insufficient as an "additional argument" to warrant avoiding the *res judicata* holding. *Osborne v. State* (1985), Ind., 481 N.E.2d 376. Here, there is no fresh view of the character of the hearsay objection or the harm which may result from its application. Also, there is no contention that the State actually procured the unavailability of Bennett or acted in bad faith in some manner in connection with his motivation to seek a new benefit. The State's interest in maintaining Bennett's sentence was very significant as was its interest in making an additional expenditure of time, effort, and material in fulfilling a threat of further prosecution. Neither does the fact of Bennett's

amenability to threat and the failure of the State to make such a threat do more than identify one more example of a deficiency in the State's efforts satisfying the unavailability rule. *Wilson v. State* (1990), Ind.App., 565 N.E.2d 761. It is not an "additional argument" which can overcome the bar of *res judicata.*

### 2. Prosecutorial Discretion

■ Appellant claims that the prosecutor abused his discretion and improperly brought capital allegations. Appellant charges that the prosecutor who filed for the death penalty abused his discretion by bringing the action out of passion or interest.

■ In Indiana, the prosecutor is an elected public official. The prosecutor is a licensed attorney subject to the attorney disciplinary process. Prosecutorial discretion to bring capital and recidivist charges does not violate any constitutional right. *Conner v. State* (1991), Ind., 580 N.E.2d 214; *Evans v. State* (1990), Ind., 563 N.E.2d 1251; *Coleman v. State* (1990), Ind., 558 N.E.2d 1059; *Collins v. State* (1981), 275 Ind. 86, 415 N.E.2d 46. This is so, because the procedures dictated by Indiana's death penalty statute subsequent to the filing of the death penalty request prevent arbitrary and capricious application of the death penalty. *Games v. State* (1989), Ind., 535 N.E.2d 530; *Bieghler v. State* (1985), Ind., 481 N.E.2d 78. However, this broad discretion may not be applied so as to deny equal protection of the law. *Smith v. State* (1981), Ind., 422 N.E.2d 1179; *Eaton v. State* (1980), 274 Ind. 73, 408 N.E.2d 1281. Furthermore, in an individual case, the prosecutor and his entire staff may be disqualified to act and a special prosecutor appointed. *State ex rel. Meyer v. Tippecanoe County Court* (1982), Ind., 432 N.E.2d 1377; *Shuttleworth v. State* (1984), Ind.App., 469 N.E.2d 1210.

At the post-conviction hearing, the prosecutor, John Meyers, testified that he had been acquainted with the victims for about four years preceding their deaths. The victims were known to him through bar functions, as Mark Thompson was an attorney. Mark Thompson was the father of Warren Thompson, then serving as the judge of the local circuit court. None of these facts warrant the conclusion that the exercise by the prosecutor of discretion to seek the death penalty in this case was improper or should have been subjected to more stringent judicial oversight.

### 3. Prosecutorial Conduct

■ Appellant alleges as a ground for relief that the trial prosecutor engaged in misconduct in arguments to the jury during the guilt and penalty stages of the trial. The post-conviction court adjudged that the comments did not rise to the level of prosecutorial misconduct. Generally, the right to a fair trial prevents the trial prosecutor from urging the jury to decide upon improper or irrelevant reasons. *Tucker v. Francis,* 723 F.2d 1504 (11th Cir.1984). Concerning this legal claim, this Court has said:

> In reviewing a charge of prosecutorial misconduct, this Court first determines whether there was misconduct by the prosecutor, and second, considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant.

*Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1063 (citations omitted). As a premise for this ground, appellant cites statements and comments of the trial prosecutor concerning: 1) the fear of appellant, which Janet Brown had previously displayed and would display as a witness; 2) the helpless, harmless, and productive natures of the victims; 3) appellant's own statements comparing himself to notorious killers Manson and Dillinger; 4) blood pulsating from the head of one victim; 5) society's interest in convicting the guilty; 6) the presumption of innocence not being designed to protect the guilty; 7) his role of prosecutor as standing in for the victims; 8) that appellant was given more due process than appellant gave the victims; and 9) the souls of the victims crying out for justice. We conclude that such comments only minimally departed from the evidence and the

law, and furthermore within the confines of this trial, lacked those features which would seriously inflame the passions and emotions of the jury. Within the confines of this trial, the jury heard the testimony of two eye witnesses who identified appellant as the triggerman, and who supplied evidence of two aggravating circumstances. Furthermore, the arguments did not under all the circumstances place appellant in grave peril at either phase of the trial. The ruling of the post-conviction court rejecting this ground is affirmed.

### 4. Mug Shot Comment

During the guilt phase of the second trial, the State attempted to introduce a photograph of appellant, taken pursuant to his arrest. Appellant objected to the admission of the photograph, and the trial court took the objection under advisement. Later, the trial court explained to the jury the procedure the court was applying in deciding not to permit the jury to see the photograph:

> A Judge generally rules ... on the admissions of evidence when it is offered and if I have a question in my mind, I can take things under advisement, ladies and gentlemen there is a question before the Court as to whether on direct examination I can admit *mug shots* and you know that I have taken under advisement....

In this proceeding, appellant complains that the trial judge's reference to the photograph as a "mug shot" improperly suggested to the jury that appellant had a criminal history. Such a suggestion, appellant argues, prejudiced him in the eyes of the jury, and denied him a fair trial.

Generally, we disdain the use of mug shots at trial for the very reason appellant complains of here. A jury might infer that a defendant who is well-known to the police, as a mug shot could demonstrate, has a criminal background. *Ratcliffe v. State* (1990), Ind., 553 N.E.2d 1208. If a jury were to infer such a history, then the jury might convict the defendant solely on this inference. *Cf. Hardin v. State* (1993), Ind., 611 N.E.2d 123 (evidence of other offenses cannot be admitted merely in an attempt to show some predisposition of the accused to commit criminal acts or to establish some likelihood that he might do so, absent some exception to this rule; the possible prejudice is that the jury might infer that the defendant possesses criminal character traits, and acted in conformity with such traits).

In laying the foundation for the photograph, the State questioned Sergeant David Payne of the Tippecanoe County Sheriff's Department about the booking process subsequent to an arrest. Payne testified that law enforcement agencies routinely photograph arrestees following an arrest; that nothing about the photographs indicates either guilt or innocence; that the photographs of appellant and Bennett were taken in the manner Payne described; and that the photographs were used for identification purposes.

The use of this term by the trial judge was improper and could have unduly influenced the jury. However, there is no basis to overturn the conclusion of the post-conviction court that no such undue influence occurred. The jury was informed that the photograph was taken incident to the arrest for the crimes for which appellant was then being tried. Further, the other evidence of guilt and of the death aggravators appears strong. This alleged error does not require the grant of post-conviction relief.

### 5. Alternate Jury Selection

Appellant alleges as grounds for post-conviction relief that the trial judge's procedure of selecting the two alternate jurors by lot was contrary to Indiana law and violated appellant's fundamental due process rights. During *voir dire,* fourteen jurors were impaneled to hear appellant's trial. Two jurors were to participate as alternates, who would witness the trial but not take part in the jury deliberations, unless they were called upon to replace a regular juror. However, the trial court did not designate at the beginning of the trial which two of the fourteen jurors would sit as alternates. At the conclusion of the presentation of the evidence, the trial court selected two jurors from the fourteen jurors sitting on the panel to serve as alternates. In selecting the two alternates, the trial court selected the two

jurors who would sit as alternates by drawing lots.

Appellant alleges error in the manner that the trial court impanelled the jury and selected the two alternates. Appellant argues that alternate jurors should be selected from the *voir dire* panel after the regular jurors are selected. The procedure employed by the trial court in selecting the alternates is a departure from the practice under Ind.Trial Rule 47. The designation of alternate jurors is usually a part of the impanelling process.

The case *Williams v. State* (1990), Ind., 555 N.E.2d 133, is instructive on this issue. In *Williams,* we recognized the nature of the jury selection process:

The purpose of the jury selection procedures is to assure that jurors are chosen on a random basis, to avoid even the possibility of bias. No litigant has the right to have any particular individual sit on the jury[,] even if qualified[,] as his right is one of rejection and not selection[,] and if he is eventually tendered a fair and impartial jury to try his case that is all to which he is entitled. In the absence of purposeful, nonrandom exclusion of prospective jurors, and with no showing of harm to the defendant, any technical noncompliance with the statutory requirements for jury selection does not amount to reversible error.

*Williams,* 555 N.E.2d at 138. Here as in T.R. 47, the essential core value is jury qualifications and impartiality. The alternate juror must have the same qualifications as a regular juror. There is no reason to believe that the core value was threatened here. This departure from the norm carried no prejudice or harm. We agree that there is no ground here for post-conviction relief.

### 6. Attempted Murder Instructions

In the second trial, the trial court's instructions included the language of the Indiana Murder and Attempt statutes. The trial court also instructed the jury how to apply these statutes:

To convict the defendant of attempted murder, the State must have proved each of the following elements, that the defendant (1) did knowingly or intentionally (2)

attempt commit [sic] the crime of murder by shooting Janet Brown in the head with a gun (3) which conduct was substantial step toward the commission of the crime of murder.

Appellant raises the ground for post-conviction relief that this instruction was erroneous, because it did not inform the jury that the State was required to prove that appellant had the intent to kill when taking the substantial step toward the commission of murder. The trial court ruled on the merits alone that the instruction was not erroneous. Our case law does not sanction this instruction. *Taylor v. State* (1993), Ind., 616 N.E.2d 748. The trial court committed fundamental error in its attempted murder instruction. The post-conviction court should have granted appellant's petition for relief based on this claim.

Because we reverse appellant's conviction for attempted murder, there is no need to address appellant's challenges to the sentence he received for attempted murder (listed above as issues seven and eight).

### 7. Delay in Transport to County Jail

Appellant claims as a ground for post-conviction relief that the trial court, in failing to have appellant transported to a jail in close proximity to his defense attorneys until one week before trial, committed error. Appellant's second trial was set for a Hendricks County court, yet appellant was held at the Tippecanoe County Jail until one week prior to trial. Appellant argues that the distance between his lawyers and himself hindered his defense, limiting the amount of time spent in consultation and the quality of the time appellant spent with his attorneys.

Appellant relies upon *Geders v. U.S.,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In *Geders,* during the defense's case-in-chief, the defendant had taken the witness stand to testify. While the defendant was subject to direct examination, the proceedings ended for the day. The trial court instructed the defendant not to discuss his testimony with anyone, not even to consult with his attorney during the overnight recess. The trial court in *Geders* reasoned that the defendant would not have the right to consult with his attorney following direct examination and prior to

cross examination, due to the danger of the defense attorney "coaching" the defendant. The United States Supreme Court reversed the trial court, holding that this instruction led to the ineffective assistance of counsel. The Court recognized that "the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." *Geders,* 425 U.S. at 88, 96 S.Ct. at 1335, 47 L.Ed.2d at 599.

*Geders* does not apply to the present case. In *Geders,* the trial court specifically took steps to prevent the defendant from consulting with his attorney. Here, the trial court did nothing to prevent appellant's attorneys from consulting with appellant. At any rate, appellant has not shown that he could not consult with his attorneys, or that appellant's attorneys were denied access to appellant. Appellant had two defense counsel. One testified at the post-conviction hearing that it was not more difficult to consult with appellant, and the distance had little effect on their ability to consult with appellant and to prepare for trial. The other testified that although appellant was being held at a location some forty minutes away, the distance did not hinder his ability to have meaningful consultation with appellant. A billing statement to appellant reveals that one defense counsel spent in excess of seven hours conferring with appellant prior to the second trial. Appellant did not show that he was denied assistance of counsel due to the distance between himself and his counsel. Therefore, the trial court was not in error in rejecting this ground.

### 8. Counsel at Guilt–Innocence Phase

█ Appellant contends that he was denied his Sixth Amendment right to effective assistance of counsel. Appellant looks to the actions of his trial counsel during the guilt phase of the trial, and observes several alleged errors. Appellant contends that his trial attorneys did not meet the requirements of the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has applied the *Strickland* standard in Indiana. *See, e.g., Johnson v. State* (1992), Ind., 584 N.E.2d 1092. First, an appellant must make

a showing that the performance of his counsel was deficient. The reviewing court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* A defendant must demonstrate that counsel's performance was unreasonable under the prevailing professional norms. *Turner v. State* (1991), Ind., 580 N.E.2d 665. "The proper judicial approach is highly deferential and requires a consideration of the totality of the evidence before the jury." *Johnson,* 584 N.E.2d at 1106. "Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through distortions of hindsight. Counsel is presumed competent, and appellant must present strong and convincing evidence to rebut the presumption." *Clark v. State* (1990), Ind., 561 N.E.2d 759, 763. Second, the appellant must show adverse prejudice as a result of the deficient performance. Appellant must prove that his attorney's failure to function was so prejudicial that it deprived appellant of a fair trial. A fair trial is denied when the conviction or sentence results from a breakdown of the adversarial process that renders the result unreliable. *Best v. State* (1991), Ind., 566 N.E.2d 1027.

█ While in retrospect one might conclude that the strategy and performance at issue was not the best, isolated instances of poor strategy or inartfully executed examinations do not necessarily amount to ineffectiveness of counsel. *Mott v. State* (1989), Ind., 547 N.E.2d 261. The appellate court will not second-guess the propriety of trial counsel's tactics. *See Hunter v. State* (1991), Ind., 578 N.E.2d 353. Additionally, the effectiveness of appellate counsel's representation is determined on appeal using the same standards as applied to trial counsel. *Thornton v. State* (1991), Ind., 570 N.E.2d 35, 37.

Appellant posits three specific instances where his trial counsel performed inadequately during the guilt phase of the trial: 1) trial counsel did not object to certain identification evidence that appellant contends was inadmissible; 2) trial counsel did not impeach the testimony of a prosecution witness; and 3) trial counsel did not object to alleged prosecutorial misconduct. After the attack,

when Janet Brown was in the hospital recovering from the attack, police visited Brown to learn if she could identify the assailant. Sergeant David Payne of the Lafayette Police Department testified that he showed Brown a series of five photographs, in hopes that Brown could aid in the investigation. Payne asked Brown to look through the array, and Brown picked out the photograph of Jim Lowery.

Appellant complains that trial counsel should have objected to the identification testimony. Appellant argues that Brown was not alert at the time of the identification, and was not fully cognizant, because of the nature of her injuries (a gunshot wound to the head and hand). Further, appellant believes that the photographic array and subsequent questioning was misleading, because Sergeant Payne only asked Brown whether she recognized anyone in the photographs, not whether anyone in the photographs was the attacker.

Where an appellant cites counsel's failure to object to support a claim of ineffective assistance of counsel, appellant is required to demonstrate that a proper objection would have been sustained by the trial court. Absent such a showing, appellant cannot prevail on an ineffective assistance of counsel claim. *Clark*, 561 N.E.2d at 763. Again, this Court, on review, will not second-guess a trial counsel's tactical decisions. *See Vaughn v. State* (1990), Ind., 559 N.E.2d 610.

At the post-conviction hearing, defense counsel Lawrence Giddings was questioned about his trial strategy with regards to Brown's testimony where she identified appellant as the assailant. Giddings testified that while he recognized that Janet Brown was under extreme stress and traumatized by the events, he believed that Brown, not the police, was the source of appellant's name as the assailant. Giddings knew that Brown had met appellant at some time before the attacks occurred. Giddings testified that he knew Brown had an independent basis for the identification.

Appellant's accusation that the police impermissibly suggested to Brown that appellant was the assailant likewise has no merit.

At appellant's second trial, Brown testified what she told the police when she was initially questioned:

I said—I said I know him but I c-c-couldn't remember the name then, and, I told them to get ahold [sic] of Judge T-thompson because he knows because he worked before them before I did.

Brown also testified that the police did not mention appellant's name, because they did not know who had committed the crimes. Brown could identify appellant, because she had met him before the attack. Although Brown could not remember appellant's name at the time, Brown knew that the attacker was the person who was the Thompson's caretaker before she was. Also, Brown testified that when Sergeant Payne presented the photo array to Brown, he asked her if she "recognized the guy that done the shooting." Brown recognized the photograph of appellant as the assailant.

Appellant has failed to show: 1) that a contemporaneous objection to the admission of Janet Brown's identification testimony would have been sustained; and 2) that his trial counsel improperly failed to object to admission of that evidence. Because appellant has not shown that trial counsel acted deficiently in not objecting, appellant's claim of ineffective assistance of counsel fails on this basis.

The second instance where appellant alleges ineffective assistance of counsel is his trial counsel's failure to impeach Brown's credibility by introducing an inconsistent prior statement. The State argues that defense counsel could not have impeached the witness where there was no inconsistency. At appellant's first trial, Brown allegedly misidentified a photograph of James Bennett as a photograph of Jim Lowery. At the first trial, defense counsel Giddings showed Brown Defendant's Exhibit A, a photograph, and asked Brown if she recognized the person in the photograph. Brown testified that the eyes of the person in the photograph looked like James Lowery's eyes, but that the picture was not very good. When asked directly if the photograph looked like a picture of James Lowery, Brown responded, "His eyes, yes." In fact, the person in the

photograph was James Bennett. Appellant argues that Giddings should have introduced this occurrence at the second trial, to cast doubt upon the accuracy or veracity of Brown's identification testimony.

Appellant is correct in stating that his trial counsel could have used this apparent inconsistent identification to impeach Brown's testimony. However, without assessing the relative impeachment weight of this evidence, we conclude that appellant's trial counsel acted reasonably in not introducing the alleged inconsistency. At the post-conviction hearing, Giddings testified why he did not introduce Brown's testimony from the first trial to impeach her identification of appellant in the second trial. Giddings testified:

> We discussed [using the prior testimony] and elected not to do that, because, uh, for a couple of reasons that I recall. Uh, first of all, uh, the photograph wasn't even a good photograph of Bennett, let alone of arguably anybody else. Second, uh, I was, I felt certain that, this, you know this was a flute [sic] during the first trial.... [T]hat photograph was available to me from the State and I knew the second time around that uh nothing like that was going to happen spontaneously, and I didn't want to drag that back up and redo that the second time around. I didn't feel it would be effective.... I don't think strategically it should have been done.

Giddings exercised trial strategy and tactics in deciding not to challenge Brown's credibility. Appellant's counsel was not ineffective for failing to impeach Brown's identification testimony using the allegedly inconsistent testimony from the first trial.

■ The third area where appellant alleged ineffective assistance of counsel is failure to object to alleged prosecutorial misconduct. In Issue 3 (above), appellant alleged several instances of prosecutorial misconduct. In this issue, appellant argues that his trial counsel should have objected to the alleged instances of misconduct, but failed to do so. The State argues that the trial counsel made judgment calls. Trial counsel did not want to draw attention to remarks by objecting to them, reasoning that although the prosecutor's actions might have been technically ob-

jectionable, they did not seem serious enough to warrant an objection. We have already held that the prosecutor in this case did not commit any prejudicial misconduct in the areas appellant alleged. Appellant's trial counsel did not provide ineffective assistance of counsel for failure to object to the prosecutor's alleged misconduct. The post-conviction court correctly decided this issue.

### 9. The *Caldwell* Claim

■ Appellant alleges as a ground for post-conviction relief that the prosecutor tainted the jury's death sentence determination by repeatedly telling the jury that their decision regarding the death penalty was only advisory. He charges that the prosecutor misstated the law to the panel during jury selection, and the jury was repeatedly told during jury selection that their sentencing decision was merely a recommendation. He argues that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that responsibility for determining the appropriateness of the defendant's death rests elsewhere, and believes that he is entitled to a new sentencing hearing for his murder convictions. Appellant also regards trial court instructions given to the jury as violative of his due process rights. One example that appellant cites is:

> It's not the function of a jury to sentence a defendant. It is solely the responsibility of the Judge, me, and the judge must make the final decision. The jury's opinion is merely a recommendation to me.

Appellant highlights other similar examples of both the State and the trial court emphasizing to the jury that their death sentence determination was merely a recommendation.

The primary case that appellant cites in support of his argument is *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231. This Court has considered this case in depth in *Fleenor v. State* (1993), Ind., 622 N.E.2d 140. The Indiana scheme differs from the Mississippi plan in that the Indiana statute gives the final decision to the trial judge, not the jury. The trial judge, not the jury, determines a capital sentence. Past decisions from our Court have reflected this

difference. In *Burris v. State* (1990), Ind., 558 N.E.2d 1067, we noted the similarities between the Indiana death penalty statute and the Florida death penalty statute. In *Burris,* we looked to a similar case arising in Florida, *Adams v. Wainwright,* 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). In *Adams,* the trial court had concluded that the capital defendant's claim did not derive any merit from the *Caldwell* decision, because the trial judge, not the jury, is the sole sentencer in Florida. As Justice White wrote for the Court, "if the challenged instruction accurately described the role of the jury under state law, there is no basis for a *Caldwell* claim." *Id.* at 407, 109 S.Ct. at 1215, 103 L.Ed.2d at 443. Neither the trial court nor the prosecutor told the jury that they were relieved of concern because the ultimate responsibility rested with the judge or this Court. *See Conner v. State* (1991), Ind., 580 N.E.2d 214.

As was the case in *Burris* and *Fleenor,* the jury here was simply informed that the responsibility for sentencing rests with the judge. In Indiana, the judge is the decision maker. The Indiana death penalty statute reads, and this Court has supported the notion that an Indiana trial court need not accept the jury's recommendation either for or against the death penalty. I.C. § 35–50–2–9; *Martinez Chavez v. State* (1989), Ind., 534 N.E.2d 731, 733. The prosecutor's comments concerning the jury's role in the death sentence determination were accurate reflections of the law in Indiana, and did not violate the principles set forth by the U.S. Supreme Court in *Caldwell v. Mississippi.*

We are also satisfied that the trial judge gave due consideration to the jury's recommendations. After reading the jury's recommendations to impose the death penalty in open court, the trial judge asked both the State and appellant whether either party knew of any reason why the court should not enter judgment on the jury's recommendation. Both the State and appellant declared that they did not have any reason. The judge dismissed the jury, then set the matter for sentencing on a date two weeks following the jury's deliberations. The prosecutor did not misrepresent the law or improperly condition the jury. The evidence does not lead unerringly to the conclusion that the jury had a false impression of their role. The post-conviction court properly denied relief on these grounds.

### 10. Constitutionality of the Subsection (b)(1) Aggravator Application

 Appellant alleged as ground for post-conviction relief that the use of the subsection (b)(1) aggravator listed in the Indiana death penalty statute, namely the intentional killing in the commission of an attempted burglary, is unconstitutional under the principle of *State v. McCormick* (1979), 272 Ind. 272, 397 N.E.2d 276. In that case, this Court held that the subsection (b)(8) aggravator, commission of another murder, could not be constitutionally applied when the other murder alleged as an aggravating circumstance is not related to the principal murder charge.

Appellant reads the *McCormick* opinion as being based upon the lack of the procedural safeguards, at the jury and judge capital sentencing hearings, protecting the presumption of innocence and the requirement of proof beyond a reasonable doubt. The post-conviction court rejected this ground, because the jury at this sentencing hearing had been fully instructed on these matters. The infirmity found in the (b)(8) aggravator in *McCormick* was the basic unfairness of requiring the accused in a capital murder trial charging the killing of A to also defend against a charge of murder in the killing of B at some other time and place. The burden of marshalling witnesses and evidence for such a composite trial before the same jury would be simply staggering and the result of such a trial would be unreliable. By contrast, the subsection (b)(1) aggravator is based upon the fact that the mind of the accused has in the same criminal episode formulated and held the intent to kill and the intent to commit one of the enumerated felonies. *Woods v. State* (1989), Ind., 547 N.E.2d 772. The basic unfairness identified in *McCormick* is not present when the subsection (b)(1) aggravator is alleged. This aspect of the judgment of the post-conviction court is affirmed.

### 11. Instructions Regarding Mitigating Circumstances

█ As a ground for post-conviction relief, appellant alleges the failure of the trial court to instruct the jury how to regard mitigating circumstances, and to list specific nonstatutory mitigating circumstances. The trial court at the second trial on these charges gave two instructions relevant to mitigation. The first set out the possible mitigators from the statute. The second stated that: "You are required to consider as a mitigating factor, any aspect of the defendant's character or record, and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death."

In the direct appeal from these convictions this Court held that the trial court "thoroughly and adequately instructed the jury, pursuant to I.C. § 35-50-2-9, how they were to weigh the evidence and determine whether to recommend the death sentence". *Lowery,* 478 N.E.2d at 1230. As mentioned above, we have held that issues raised and decided on direct appeal are not reviewable in a petition for post-conviction relief, and are *res judicata.* An issue that is raised on direct appeal and is decided adverse to appellant's position is *res judicata* in post-conviction proceedings. *Grey v. State* (1990), Ind., 553 N.E.2d 1196. Appellant initially raised the issue concerning the trial court's instructions regarding aggravating and mitigating circumstances in his second direct appeal, and this Court resolved the matter against appellant. The post-conviction claim adds another example to the list of deficiencies presented in the direct appeal. The example is not fresh. This ground was foreclosed by the direct appeal.

### 12. Adequacy of Review Rules

█ Appellant argues that Indiana's appellate courts lack a sufficient process for the proportionality review of death sentences. Appellant believes that the appellate rules for the review of sentences are inadequate to protect the due process rights of defendants convicted of capital offenses. Appellant challenges the Indiana Rules for the Appellate Review of Sentences, arguing that although our Court has previously determined that these rules provide for adequate and meaningful review of death sentences, we have not addressed the issue of review for proportionality.

We have already addressed this specific issue in appellant's direct appeal, and ruled against him. *Lowery,* 478 N.E.2d at 1220. The issue is *res judicata* in this case. Further, as we held on appeal, existing Supreme Court rules appropriately provide for the meaningful appellate review of every death sentence. *Id.* Moreover, we have repeatedly held that our standard rules of appellate review allow for the requisite meaningful appellate review of death penalty cases. *Games v. State* (1989), Ind., 535 N.E.2d 530; *Fleenor v. State* (1987), Ind., 514 N.E.2d 80. Indiana's death penalty statute requires that the trial court weigh factors in aggravation and mitigation and enter a specific record of its reasoning, which is automatically reviewed by this court. We have adjudged this process to be sufficiently tailored to ensure the death penalty is not arbitrarily or disproportionately imposed. *Townsend v. State* (1989), Ind., 533 N.E.2d 1215. Because of procedure mandated by statute and controlled by cited precedent, this Court can conduct sufficient and systematic review of each case in which capital punishment has been imposed, in light of other death penalty cases. The post-conviction court was not in error in rejecting this ground for post-conviction relief.

### 13. The Electric Chair

█ The post-conviction court rejected appellant's ground based upon the factual claim that Indiana's electric chair is in a state of great disrepair. The ground is based upon the prohibitions against cruel and unusual punishment. The ground does not include the argument that the death penalty or even the use of an electric chair generally is unconstitutional. Rather, the contention is that Indiana's electric chair is so old and in such an extreme state of disrepair that its very use would result in the unnecessary and wanton infliction of pain, because the chair does not function properly.

The post-conviction court granted the State's motion for summary judgment on this ground. Appellant did present the post-con-

viction court a response opposing the State's Motion for Summary Disposition. That response is part of the record certified to this Court. In the response, appellant cited the dissent of Justice Brennan in *Glass v. Louisiana*, 471 U.S. 1080, 105 S.Ct. 2159, 85 L.Ed.2d 514 (1985), describing death electrocution in detail; a newspaper account relating that Indiana officials had to send five separate jolts of electricity in order to execute William Vandiver; and another newspaper account relating the urging of a deputy commissioner of operations in the Indiana Department of Corrections, before a legislative committee that either the system of executions in Indiana should be changed, or the state's 50 year old electric chair should be upgraded.

We are in accord with the post-conviction court that no genuine issue of material fact was at issue and the State was entitled to summary judgment.

**14. Improper Aggravating Circumstance**

■■ Appellant alleged as a ground that the trial court erred when it applied an aggravating circumstance that the jury was not allowed to consider. As the aggravators for the first murder count, the State alleged 1) the intentional murder of Mark Thompson while attempting to commit burglary, and 2) that Jim Lowery had committed another murder, that of Gertrude Thompson. As the aggravators for the second murder count, the State alleged 1) the intentional murder of Gertrude Thompson while attempting to commit burglary, and 2) that Jim Lowery had committed another murder, that of Mark Thompson. The trial court tendered final jury instructions that alerted the jury of these allegations. After the jury had delivered its recommendation to the trial court, the judge delivered his final sentence determination. However, the trial judge, in announcing his findings of fact and conclusions of law, found as an aggravating circumstance that appellant had "been *convicted* of another murder."

Again, appellant failed to raise this claim in his direct appeal, and the issue is subject to procedural default. However, due to the fundamental nature of the error, we will review this issue. Appellant contends that the

trial court erred when it considered an aggravating circumstance that the jury did not consider. The jury deliberated about whether appellant had *committed* another murder, while the trial judge apparently focused upon whether appellant had been *convicted* of another murder. Appellant argues that these aggravators are not identical. The State argues that the trial judge merely misspoke, intending to state the aggravator as it appeared in the information. The State believes that a sentencing court on remand would reach the same decision.

This Court was confronted with a similar situation in *Thompson v. State* (1986), Ind., 492 N.E.2d 264. There, the jury was given the "convicted of another murder" aggravator although there was a legal bar to their consideration of it. Since the judge is confined to the same standards as the jury, he too was barred from consideration of it. Here the situation is different. The jury was given the "commission of another murder" aggravator and could properly give consideration to it. And we are convinced that the judge, after reading the "commission of another murder" aggravators in the death sentence allegations of the charge, and after instructing the jury on the "commission of another murder" aggravator, did apply that same aggravator as had the jury, although he misspoke. There is no ground here for post-conviction relief.

**15. Defense Counsel at the Penalty Phase**

■■ As a ground for post-conviction relief, appellant alleged that his trial counsel had rendered ineffective legal assistance at the sentencing phase of the trial, contrary to the command of the Sixth Amendment. The burden on this ground was upon appellant. The trial court rejected this ground on its merits, finding it unsubstantiated.

As we have already stated, the standard of review for ineffective assistance of counsel claims has two parts. First, an appellant must make a showing that the performance of his counsel was deficient. Second, the appellant must show adverse prejudice as a result of the deficient performance. Appellant must prove that his attorney's failure to

function was so prejudicial that it deprived appellant of a fair trial.

At the post-conviction hearing, Lawrence Giddings, one of appellant's trial counsel, testified that he had contacted appellant's family in preparation for the sentencing phase of the trial, in order to gather possible mitigating evidence. Giddings testified that he placed telephone calls, wrote letters, and met with appellant's family prior to the sentencing hearing. Giddings stated, "They didn't have uh the kind of evidence in the case that uh, that in my opinion that was going to be anything conclusive as far as a penalty phase was concerned." Giddings made the discretionary decision not to present their testimony at trial, as he believed that the evidence they would have presented was not helpful.

The testimony that Giddings did elicit appears to show that Jim Lowery had a rough childhood. His family was poor. His father was an alcoholic who threatened and bullied the children. Also, appellant is portrayed as the good, older brother who protected his younger siblings, and who the younger children looked to for support. There was testimony that Jim Lowery helped his father with odd jobs when Jim was growing up. There was testimony that Jim Lowery did not have many close friends as he grew up, that he was a loner.

When appellant was about fifteen years old, he was committed to a mental hospital for stealing cars. Appellant's family testified that they did not believe that appellant had any mental disorders. Eventually, the Lowerys saved enough money to hire an attorney to gain appellant's release. Appellant introduced evidence to show the conditions at the Logansport State Hospital and the Norman Beatty State Hospital in Westville, which showed that the conditions were miserable.

Giddings tried to portray appellant in a favorable light, as a victim of his circumstances. Giddings attempted to show that appellant's childhood within a dysfunctional family served as a mitigating circumstance. Also, Giddings sought to use appellant's possible mental disorder, as well as the time he spent in the mental hospitals as mitigators. At the sentencing hearing, Giddings presented evidence to support the existence of these possible mitigating circumstances. At the post-conviction hearing, Giddings testified that while appellant was imprisoned between the first and second trials, he prevented an inmate from taking his own life, helped clean and repair areas of death row, volunteered to help when needed, and was generally a model prisoner. It appears that appellant now takes issue with the type and amount of evidence that was presented, not whether any evidence had been presented at trial.

When ineffective assistance of counsel is alleged and premised on the attorney's failure to present witnesses, it is incumbent upon the petitioner to offer evidence as to who the witnesses were and what their testimony would have been. *Wallace v. State* (1990), Ind., 553 N.E.2d 456. At the post-conviction hearing, appellant's brothers, sisters, and parents complained that they did not have the opportunity to testify at appellant's second trial. In fact, appellant's parents, Louis and Arlene Lowery, and appellant's brother, Albert Lowery, testified at the sentencing hearing. At the post-conviction hearing, Albert Lowery testified that he had spoken with his appellant's trial attorneys only once, for about ten minutes. Appellant used this information to attempt to show that Giddings had not conducted an adequate investigation for mitigating circumstances.

Another brother, Louis Lowery, Jr., testified that Jim Lowery loved kids, liked to be around kids, and bought small gifts for Barbara Lowery's children. Nina Conkright Hopkins, appellant's former girlfriend, testified that Jim Lowery was kind to children. Ruth Fields, appellant's sister, testified about appellant's childhood, and his kindness to children. Appellant argues this evidence shows that appellant does possess some qualities that should operate to mitigate his capital sentence.

At the post-conviction hearing, appellant presented some additional evidence about his kindness to children. However, much of the evidence that appellant presented at the post-conviction hearing mirrored evidence that was presented at the sentencing hearing, namely that appellant had a disadvantaged, unfortunate childhood. On direct ap-

peal, we held that the trial court was not required to believe that the circumstances of appellant's childhood necessarily functioned as mitigating factors. While appellant's trial counsel should have included the omitted testimony, we do not believe that these omissions rose to the level of ineffective assistance of counsel. The evidence itself was repetitious and already before the jury and the judge. Appellant's counsel exercised his discretion in choosing to exclude the testimony. The claim of ineffective assistance of counsel during the penalty phase of the trial was properly rejected.

### 16. Direct Appeal Counsel

 As the final ground for post-conviction relief, appellant alleges that his appellate counsel had rendered ineffective legal assistance, contrary to the guarantee of the Sixth Amendment. The burden on this ground was upon appellant in the post-conviction court as petitioner, and in light of the judgment against petitioner, on appeal as well. The gravamen of the ground is twofold: 1) counsel did not include a transcript of the jury selection proceedings in the record for this Court to review during the direct appeal; and 2) appellate counsel did not present fundamental errors to this Court during the direct appeal.

The standard of review for a claim of ineffective assistance of appellate counsel is identical to the standard for trial counsel. *Thornton*, 570 N.E.2d at 37. First, an appellant must make a showing that the performance of his counsel was deficient. Second, the appellant must show adverse prejudice as a result of the deficient performance. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Again, this Court will presume that counsel is competent, and appellant must present strong and convincing evidence to rebut the presumption. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 763. However, when reviewing the denial of post-conviction relief, we will not set aside the post-conviction court's ruling unless the evidence, without conflict, leads to one result, and the post-conviction court reached the opposite result. *Smith v. State* (1989), Ind., 535 N.E.2d 1155.

Deputy State Public Defender David Freund was appellant's appellate counsel.

The praecipe included a request that the record "should include the entire record . . . including transcripts of the jury trial (including *voir dire* examination of juror [sic], and any hearing held out of the presence of the jury either during or after the trial). . . ." However, at the post-conviction hearing, Freund testified that the transcript of the jury *voir dire* examination was not included in the record of proceedings filed with this Court for the appeal.

Freund believed that the only possible error in the jury selection procedure was the refusal of the trial court to grant individualized *voir dire*. However, Freund believed that the arguments concerning the process known as "death qualification" were not worth pursuing, because individualized jury selection had never been granted. Freund decided not to pursue any claim of error in that area, and did not have any need for the *voir dire* transcript. Freund, after consulting with State Public Defender Susan Carpenter, decided not to seek the transcript. Freund testified that he had made a strategic decision not to have the transcript of the jury *voir dire* prepared. Further, Freund concluded that "if there was something that, that bad that happened at *voir dire*, . . . it was already waived. . . ."

To rebut Freund's testimony, Brent Westerfeld, appellant's post-conviction counsel, introduced an itemized bill of the State Public Defender's Office to the Hendricks County Circuit Court, which detailed the costs of the case. Absent was an entry that specifically denoted review of the record of the proceedings, although the bill contained a plethora of general entries entitled "Brief Preparation." Following a long line of questioning, Westerfeld suggested that Freund could not have judged whether appellant's theory of improper *voir dire*/individualized jury selection was valid, because Freund apparently had not reviewed the transcript of the proceedings or talked with anyone who knew what had happened.

It appears from the record that Freund did review the trial record, including the alleged anomaly in the jury selection process. Freund made a strategic decision not to pursue the "death qualification" issue. Freund

also concluded that the issue, if it existed, was unavailable, because appellant's trial attorney had not raised it in appellant's motion to correct errors. The evidence appellant presents conflicts with the evidence supporting Freund's actions. The post-conviction court logically concluded that Freund acted competently and provided effective assistance of counsel.

Appellant alleges that the trial court committed many fundamental errors at the guilt and penalty stages of the trial. Appellant believes that many of the issues he raises here on post-conviction appeal are fundamental error. Appellant argues that his appellate counsel should have raised, developed, presented, and preserved these issues, but failed to do so. Due to such failures, appellant now claims that his appellate counsel was deficient and did not meet the *Strickland* standard for representation. Appellant contends that if the errors would have been presented on appeal, then it would have been reasonably probable that his convictions and death sentences would have been overturned, and the appellate court would have ordered a new trial and a new sentencing hearing.

At the post-conviction hearing, Freund testified that no objections were made to these alleged errors at trial, and the incidents appeared so isolated that they did not appear to amount to fundamental error. Freund commented:

> [I]f I had identified something in the record that I thought was fundamental error, [in] other words, there was both plain error, and I felt that I could make a good case for prejudice, ... I would have raised it. Uh, if it was a marginal thing, you know, maybe I saw something that was error, but I wasn't sure there was prejudice, maybe I wouldn't have under, you know, that standard, knowing that well that can be addressed later on.... [B]asically, ... my practice has been that if I have identified something and I strongly believe it's fundamental error, I will press forward with it.

Freund was hesitant to raise what he considered to be frivolous claims. Freund also noted that, in his assessment, there was some overwhelming evidence that appellant had in fact committed the crimes.

We agree with Freund that the actions appellant regards as errors were not errors, were not fundamental in nature, and, if raised, would have been frivolous. We have reviewed the many issues that appellant has presented, and note that appellate counsel acted appropriately. On appeal, appellate counsel did raise the only errors apparent on the record, but the issues were decided against appellant. Counsel will not be deemed ineffective for failing to present meritless claims. *Vaughn v. State* (1990), Ind., 559 N.E.2d 610, 615. Freund exercised professional judgment and expertise in deciding not to pursue the claims appellant raises in this appeal. On appeal, judicial scrutiny of counsel's performance is highly deferential. The evidence before the post-conviction court with respect to legal assistance provided by Freund is such that it does not lead unerringly to the conclusion that such assistance was constitutionally deficient. Therefore the finding of the post-conviction court will not be disturbed.

## CONCLUSION

Lowery has raised numerous issues in this appeal from the denial of his post-conviction relief petition. Of those we have identified only one error. We hold that the post-conviction court was in error in concluding that there was no fundamental error in the jury instructions upon the elements of the crime of attempted murder. The judgment of the post-conviction court is reversed in that part. The post-conviction court is instructed to grant post-conviction relief and reverse the conviction for attempted murder. The remainder of the judgment of the post-conviction court is affirmed, as are the convictions for murder and the sentence of death. We reverse in part, affirm in part, and remand this case to the post-conviction court for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., dissents and concurs with opinion.

SULLIVAN, J., concurs except as to issue no. 6 on which he dissents.

GIVAN, Justice, dissenting and concurring.

I respectfully dissent from the majority opinion's holding that there was fundamental error in the trial court's instruction concerning attempted murder.

Although I have repeatedly dissented to the course this Court has taken with regard to instructions as to attempted murder, (see the dissents in *Smith v. State* (1984), Ind., 459 N.E.2d 355, 361, *Spradlin v. State* (1991), Ind., 569 N.E.2d 948, 951 and *Taylor v. State* (1993), Ind., 616 N.E.2d 748, 750.) I concede that the directions of this Court as to the precise language which must be used are easily followed. The errors perceived by the majority of this Court are not likely to be repeated.

I nevertheless must take exception with the application of that principle of law in the case at bar. As correctly pointed out in the majority opinion, this is not a direct appeal but an appeal from the denial of post-conviction relief. In order to afford that relief, the trial court must have committed fundamental error. If we concede that the trial court's instruction did not comport with the language required by the majority of this Court, we still must examine the situation to determine whether fundamental error occurred.

When one examines the facts in this case, it is preposterous to believe that the jury was misled by the court's instructions to the extent of finding appellant guilty of attempted murder when there was a chance he in fact had no intent to kill Janet Brown. The facts show that appellant had worked for Mr. and Mrs. Thompson and was well-known by both of them. Janet Brown also knew appellant.

When appellant and his confederate came to the Thompson property with the intent of robbing the Thompsons, it is obvious that because he was well-known to them appellant fully intended to kill the Thompsons, which he in fact did. He also knew that Brown knew him and deliberately removed her from her home and took her at gunpoint to the Thompson's home. After killing both Mr. and Mrs. Thompson, appellant attempted to shoot Brown, and as he pointed the gun at her head and pulled the trigger, she was quick enough to divert the aim of the gun with her hand and was agile enough to escape from appellant before he could fire a second shot at her. To say that because of the jury instruction there was a real danger that appellant would be wrongfully convicted of attempting to kill Brown defies reason.

I would not reverse appellant's conviction of attempted murder. In all other respects I concur with the majority opinion.