Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 03 2013, 5:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN A. ENGLAND**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MILTON L. MEDSKER, )
 )
 Appellant-Petitioner, )
 )
 vs. ) No. 49A02-1303-PC-203
 )
STATE OF INDIANA, )
 )
 Appellee-Respondent. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0709-PC-184416

**October 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant-Petitioner Milton Medsker was convicted of murder and sentenced to fifty-five years of incarceration. Medsker's conviction and sentence were affirmed on direct appeal. Medsker filed a petition for post-conviction relief ("PCR"), ultimately claiming that he received ineffective assistance of trial counsel. After a hearing, the post-conviction court denied Medsker's PCR petition. On appeal, Medsker contends that the post-conviction court erred in denying his claim of ineffective assistance of trial counsel and that the post-conviction court improperly limited Medsker's testimony at the PCR hearing. Finding no merit in these arguments, we affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts underlying Medsker's conviction were related by this court in its disposition of his direct appeal:

> On January 18, 2006, Robert Wheat's body, partly covered in plastic, was found in an alley in the 900 block of Haugh Street in Indianapolis. Wheat died from a gunshot wound to the head. It appeared that he had been moved from somewhere else to the spot where he was found. A Crown Royal bag containing more than seven thousand dollars was found on Wheat's body.
>
> The murder investigation went on for a number of months. Detective Marcus Kennedy, the lead investigator, eventually was led to interview as potential suspects or witnesses: Bonnie Cardwell, Joe Skorjanc, Susan Robbins, Ryan Baird, Naquita Baird, Josh Manuel, Mary Egan and Russell Andrus. The story emerged that Wheat, Skorjanc and Cardwell had been dealing large quantities of methamphetamine.
>
> Wheat had been Robbins' boyfriend, and they remained friends. At some point she introduced Wheat to Cardwell, Skorjanc and Medsker. Sometime after the murder, Medsker and two friends visited Robbins at her home to help her pick up her car from a mechanic. In the car on the way back Medsker told Robbins that he had killed Wheat, that Skorjanc had him do it because of a planned robbery that went bad. Bonnie Cardwell, Skorjanc's sister, had set up the robbery. The plan was to take money from Wheat, but

2

Wheat would not "come up with the money for the pound of methamphetamines to give the money to Bonnie," so Medsker shot him. Tr. at 67-68. He said that he only did what Skorjanc told him to do. Medsker insisted that it was supposed to be a robbery until Wheat would not give them the money. Medsker said he used Skorjanc's gun. Robbins was devastated, and Medsker told her he was sorry.

Medsker admitted killing Wheat to several others. He told Ryan Baird that he had killed someone. Baird responded, "yeah, right," because he did not believe Medsker. Tr. at 160. Medsker then said, "no, really, I killed a guy." Tr. at 160. He then told Baird he had shot the victim in the head, wrapped him up and dropped him off in an alley near Haugh Street. He showed Baird a gun he was carrying. After Baird testified about whether he believed Medsker, the court allowed the defense to question Baird about his opinion as to whether Medsker was telling the truth and about Medsker's reputation for truthfulness. In response Baird testified that Medsker liked to be the center of attention and had a reputation for making up stories. Baird said Medsker was known to lie and had a reputation for making up stories, but not about killing a man.

Niquita Baird testified that Medsker told her that he had killed somebody. He shot the victim in the head, wrapped the victim in plastic and dropped him off near Ninth and Haugh. On another occasion Medsker told her that he needed to "maintain being cool with [Bonnie Cardwell] so she doesn't tell on me for killing that guy." Tr. at 137. Russell Andrus, Josh Manuel and Mary Egan all testified to incriminating statements Medsker had made about the killing. Of these, Manuel testified on direct that he did not take Medsker seriously. On cross examination Manuel said he did not go to the police when he heard Medsker's admission, and that Medsker had a reputation for making up stories. Medsker's admissions and his knowledge of the particulars of the murder led to his conviction.

*Medsker v. State*, Cause No. 49A02-0812-CR-1134, slip op. at 1 (Ind. Ct. App. Aug. 4, 2009), *trans. denied*. Medsker was convicted of murder and sentenced to fifty-five years of incarceration. *Id*. Following his direct appeal, in which Medsker challenged the sufficiency of the evidence to sustain his convictions and claimed that the trial court erroneously excluded certain evidence, this court affirmed his conviction. *Id.* at 3.

Medsker filed a PCR petition, which he amended on July 27, 2012. Medsker's sole claim was that he had received ineffective assistance of counsel. Of relevance to this appeal,

3

Medsker claimed that his trial counsel was ineffective for failing to sufficiently impeach Robbins, whose trial testimony regarding Medsker's confession to her differed significantly in several respects from a statement she had previously given to police. The post-conviction court held a hearing on the PCR petition on September 18 and 25, 2012. Brian Lamar, Medsker's trial counsel, testified that he did not attack Robbins's credibility because that would have been inconsistent with his trial strategy, which was essentially to concede that Medsker had confessed to several people that he had killed Wheat but that those confessions were false.

Also at the PCR hearing, the post-conviction court allowed Medsker to make an offer of proof regarding how he would have testified at trial. Medsker's offer of proof indicated that he would have testified at trial that he never made any of the incriminating statements to which several witnesses testified. Lamar testified that he would have called Medsker to testify had Medsker insisted. The post-conviction court denied Medsker's PCR petition.

## DISCUSSION AND DECISION

### *PCR Standard of Review*

Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.… Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

4

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

## I. Ineffective Assistance of Trial Counsel

We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694, 104 S.Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind. 1994). …. Failure to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Moreover, counsel is given wide discretion in determining strategy and tactics, and therefore courts will accord these decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case." *Oliver v. State*, 843 N.E.2d 581, 591 (Ind. Ct. App. 2006), *trans. denied*. "A defendant must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense." *Id.*

Medsker contends that Lamar was ineffective for failing to impeach Robbins on the inconsistencies between her trial testimony and previous statement to police. Lamar,

5

however, testified that he was well aware of the inconsistencies but elected not to exploit them because to do so would have been incompatible with his trial strategy. Again, Lamar's trial strategy, which Medsker agreed with, was to concede that Medsker had told several persons that he killed Wheat but that these confessions were false. Under the circumstances of this case, given the number of persons who were going to testify that Medsker confessed to them, Lamar's trial strategy seems entirely reasonable, and attacking the credibility of those persons would have been incompatible with it. Medsker argues that the far better trial strategy would have been to attack the credibility of all of the State's witnesses against him, but even if this is true (which we do not believe), the question is only whether Lamar pursued a strategy that was reasonable under the circumstances, which he did. Medsker has failed to establish that Lamar's performance was deficient in this regard.

## II. Whether the Post-Conviction Court Abused its Discretion in Limiting Medsker's Testimony

Medsker contends that the post-conviction court abused its discretion in refusing to allow him to testify regarding how he would have testified at his trial had he been put on the stand. The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002). We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*,

6

839 N.E.2d 178, 182 (Ind. Ct. App. 2005). We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006).

As previously mentioned, while the post-conviction court did not allow Medsker's testimony, Medsker's offer of proof reveals that the substance of his trial testimony would have been that he did not, in fact, tell any of several trial witnesses that he killed Wheat. Medsker wanted to introduce this evidence to support his argument that Lamar was ineffective for failing to put him on the stand at trial, a claim he does not raise again on appeal. Given the nature of what Medsker would have testified to at trial, we conclude that any error the post-conviction may have made in refusing to admit Medsker's testimony can only be considered harmless. Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000). Here, Medsker's trial testimony would have been just as incompatible with Lamar's trial strategy (which we have already determined was reasonable) as an impeachment of Robbins would have been. Consequently, we conclude that the admission of Medsker's post-conviction testimony would have made no difference, as it would not have established that Lamar's trial strategy was unreasonable in any event. Any error the post-conviction court may have made in this regard was harmless.

The judgment of the post-conviction court is affirmed.

BAILEY, J., and MAY, J., concur.